**STATE of Tennessee, Appellee,**

v.

**James R. THOMAS, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

April 19, 1988.

Permission to Appeal Denied by Supreme Court July 25, 1988.

Gary Mason Jones, Asst. Public Defender, Nashville, for appellant.

W.J. Michael Cody, Atty. Gen. and Reporter, Miriam N. Banks, Asst. Atty. Gen., Thomas H. Shriver, Dist. Atty. Gen., Ronald E. Miller, Asst. Dist. Atty. Gen., Nashville, for appellee.

## OPINION

JONES, Judge.

The defendant, James R. Thomas, was convicted of murder in the second degree by a jury of his peers. He stipulated that, if convicted of a felony, he employed a firearm while committing the offense. The trial court sentenced the defendant to a term of thirty-two (32) years in the Department of Correction. An additional term of five (5) years in the Department of Correction was added to the sentence because a firearm was employed during the commission of the offense. T.C.A. § 39–6–1710(a)(1). The trial court ordered the latter sentence be served consecutively pursuant to the mandate of T.C.A. § 39–6–1710(a)(3).

The defendant filed a motion for a new trial pursuant to Tenn.R.Crim.P. 33. He also filed a motion for a reduction of sentence pursuant to Tenn.R.Crim.P. 35. The trial court denied both motions. The defendant subsequently appealed as of right to this Court pursuant to Rule 3(b), Tenn.R. App.P.

## ISSUES PRESENTED FOR REVIEW

The defendant has presented five (5) issues for our review. He contends the evidence is insufficient to sustain his conviction for murder in the second degree, a witness was permitted to express an opinion concerning the defendant's state of mind when he committed the offense, the assistant district attorney general was permitted to argue during summation that the jury had the duty to set the standards for acceptable conduct in the community, the trial court refused to give the defendant's special request concerning "an imperfect self-defense", and the sentence imposed by the trial court is excessive.

## SUFFICIENCY OF THE EVIDENCE

■ The defendant contends the evidence contained in the record does not support his conviction for murder second degree because it does not establish the killing was malicious. The defendant argues:

The evidence simply does not support the jury's finding that the killing was malicious. The defendant shot Mr. Sanders in what was imperfect self-defense. He submits that the shooting could not have occurred but for his [the defendant's] high level of intoxication and the provocation of Mr. Sanders.

In summary, the defendant contends he is guilty of voluntary manslaughter, not murder second degree. We disagree.

The defendant is an alcoholic and has a drug addiction. He admitted that he was a frequent user of marijuana and consumed Valium regularly. His abuse of alcohol and drugs spans a period of fifteen (15) years—his entire adult life. The record is replete with testimony that the defendant had been drinking beer, smoking marijua-

na, and consuming Valium on the date in question. The defendant's abuse began the day before he killed the victim and continued until he fired the fatal shot.

The defendant was told on the morning he killed the victim that his wife was having an affair. Later, he talked to the Laws, and they verified that his wife was having an affair. Apparently the defendant became quite despondent and distraught. He borrowed a shotgun from his brother for the purpose of committing suicide.

The defendant returned to the Laws' residence and threatened to commit suicide. He placed the gun to his throat, but he did not shoot himself. Instead, he fired the weapon through the roof of his pickup truck. He testified he did not shoot himself at that time because he wanted his wife to witness the suicide. His best friend took the shotgun away from him at one point. However, the defendant pursued him with a knife, threatened to cut his friend if he did not return the shotgun, and the friend returned the gun to him.

During the interim period between the threatened suicide and the killing of the victim, the defendant left the Laws' residence alone on several occasions. On one occasion he went to a residence where his wife's car was parked and proceeded to shoot out the back window. A portion of the buckshot missed or deflected off the motor vehicle and entered the residence. On another occasion he entered the home of his wife's paramour. The man was asleep. The defendant woke the man, cut him with a knife, and threatened to kill the man before leaving.

The victim and his girlfriend arrived at the Laws' residence at approximately 6:00 p.m. He sat at a table occupied by the defendant and several other individuals. The victim had been drinking prior to his arrival, but he was not intoxicated.

The defendant received a telephone call accusing him of shooting at his wife's car and into the residence where her car was parked. The caller advised him a warrant had been issued for his arrest. The defendant denied the incident. However, he threatened to go to the residence for the purpose of giving the occupants reason for obtaining an arrest warrant. The victim told the defendant "it didn't take much of a man to go up there and shoot at a house with kids." The defendant replied that "he didn't care because his [child] wasn't there." He then asked the victim if he wanted trouble too. The victim replied in the affirmative. The defendant immediately went to his truck, obtained a shotgun, and returned to the table.

The victim was standing beside the picnic table. He was unarmed. He made no attempt to harm the defendant. However, he told the defendant he would pay dearly for getting the gun; and, when the defendant aimed the shotgun at the victim, the victim told the defendant to return the gun to his truck. Instead, the defendant shot at the victim, but missed. The victim then ran behind a tree located in the yard. The defendant fired a second shot at the tree. The victim obtained a brick from his position behind the tree. After the second shot the victim stepped from behind the tree with the brick, but made no movement towards the defendant. The defendant shot the victim in the chest with 00 buckshot and immediately fled in his truck. The victim died shortly after being shot.

The defendant testified that he was drunk, upset, confused and scared during his confrontation with the victim.

It is undisputed that the defendant had been drinking and was under the influence of alcohol when he killed the victim. However, the eyewitnesses all testified that the defendant was not drunk. The defendant was not slurring his words, stumbling, falling to the ground, or bumping into others due to his intoxication. He had no visible problems operating his pickup truck. The defendant's best friend testified the defendant knew what he was doing during the confrontation with the victim.

The defendant testified that he was afraid of the victim. He had been involved in a prior altercation with the victim, and he was aware that the victim had cut a person so severely the wounds required 200 to 300 stitches, broke the nose of a friend

and hit the friend in the nose again before the nose break had healed, and assaulted another friend of his. He established by others that the victim had a bad reputation for violence.

The defendant thought the victim "was just trying to start trouble" and he obtained the shotgun because he felt threatened. His intention was "just to shoot to scare him [the victim], let him know I wasn't going to stand there and let him beat the hell out of me." When he shot the victim, his only thought was "not to let him [the victim] get his hands on me."

When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at trial is sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn.R.App.P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or direct and circumstantial evidence. *Farmer v. State*, 208 Tenn. 75, 343 S.W.2d 895, 897 (1961); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn.1977).

In determining the sufficiency of the evidence, we do not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). Nor may we substitute our inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State*, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956); *Farmer v. State*, 574 S.W.2d 49, 51 (Tenn.Crim.App.1978). To the contrary, we are required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn form the evidence. *State v. Cabbage*, supra.

Questions concerning the credibility of witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. *State v. Cabbage*, supra. In *State v. Grace*, 493 S.W.2d 474, 476 (Tenn.1973), our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d at 476.

■ Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, *State v. Grace*, supra, the defendant has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982). This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record, and any inferences which may be drawn from the facts, are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. *State v. Tuggle*, supra.

There is sufficient evidence contained in the record from which a rational trier of fact can conclude that the defendant is guilty of murder second degree. Tenn.R. App.P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

## OPINION AS TO STATE OF MIND OF THE DEFENDANT

■ The assistant district attorney general began his cross-examination of the witness Herbert Jackson by asking: "Mr. Jackson, he [the defendant] was intoxicated but did he know what he was doing?" Jackson answered the question by saying "yes." Later, the assistant district attorney general established through the witness that the defendant did not fall to the ground, stumble, bump into another person, or slur his words as a result of his intoxication. When questioning the witness about the events surrounding the killing of the victim, the assistant district attorney general asked the witness: "Was the defendant stumbling any when he was doing that or did it look like he was drunk or couldn't control himself?" Jackson answered the question by saying: "No, sir; he was—like I say, he was drunk, but he wasn't stumbling or anything like that." He was then asked: "He [the defendant] knew what he was doing?" Defense counsel interposed an objection to this particular question. The trial court overruled the

objection, stating: "The witness has already answered, but he can answer it again."

█ In this jurisdiction the control of the cross-examination of witnesses rests within the sound discretion of the trial court. *State v. Fowler*, 213 Tenn. 239, 253, 373 S.W.2d 460, 466 (1963); *Monts v. State*, 214 Tenn. 171, 184, 379 S.W.2d 34, 40 (1964). This Court will not interfere with the exercise of this discretion absent clear abuse. *Evans v. State*, 557 S.W.2d 927, 934–935 (Tenn.Crim.App.1977); *State v. Johnson*, 670 S.W.2d 634, 636 (Tenn.Crim. App.1984).

In the case *sub judice* the defendant did not object when the prosecution first asked the question and the witness answered. Thus, this fact became evidence; and the trial court did not abuse its discretion in permitting the assistant district attorney general to ask the question a second time. See *Hale v. State*, 198 Tenn. 461, 477, 281 S.W.2d 51, 58 (1955).

This issue is without merit.

## ASSISTANT DISTRICT ATTORNEY GENERAL'S STATEMENTS DURING SUMMATION

During his closing argument defense counsel attacked the victim and made numerous remarks concerning the victim's reputation for violence in the community. In his rebuttal argument the assistant district attorney general said:

Now, you may not realize it, but you, ladies and gentlemen, are the representatives of this community. You have been elected, sworn and chosen to sit on this case and judge the fate of Billy Ray Sanders [sic] on behalf of all the people in this community. That includes not only the people here involved in the case, but the defendant and the victim's family back there. It involves everybody in this community.

You are the only body in this country who can judge Billy Ray Sanders [sic]; it's your sole responsibility and duty. You are the ones to set the standard for the actions of the other persons in this

community to govern their conduct to the requirements of society.

Defense counsel interposed an objection, stating "... I object to that; that is not at all an accurate statement and I object to counsel exceeding the scope of...." The trial judge interposed at this point and said: "I think it is reasonable argument...." The assistant district attorney general concluded his argument by telling the jury:

You are the ones to tell the people what conduct is accepted and what conduct is not. You must tell James Thomas and the others who might follow him that his conduct cannot and will not be accepted by the people in this community.

The defendant argues that the argument of the assistant district attorney general was improper, and the trial court committed egregious error when he overruled his objection. He asserts that his conviction should be reversed for this reason. We disagree.

The control of closing argument rests largely within the sound discretion of the trial court. *State v. Coe*, 655 S.W.2d 903, 912 (Tenn.1983), cert. den. 464 U.S. 1063, 104 S.Ct. 745, 79 L.Ed.2d 203 (1984); *Post v. State*, 580 S.W.2d 801, 808 (Tenn.Crim. App.1979). This Court will not interfere with the exercise of this discretion absent clear abuse. *State v. Sutton*, 562 S.W.2d 820, 823 (Tenn.1978); *Post v. State*, supra. The trial court did not abuse its discretion in the case *sub judice*.

This issue is without merit.

## SPECIAL REQUEST CONCERNING "AN IMPERFECT SELF–DEFENSE"

█ The defendant tendered a special request containing an instruction regarding what defense counsel calls "an imperfect self-defense." The special request reads as follows:

Should you find that the defendant ... did not act in his necessary defense in killing the deceased ..., but you find that ... [the defendant] was provoked by the deceased ... to the extent as to provoke excitement and passion as would obscure the reason of an extraordinary

man and induce him under such excitement and passion to strike the blow that caused the death of the deceased this will reduce the killing to manslaughter.

The trial court refused the request because the subject matter of the request was fully covered in the charge the trial court gave to the jury. The trial court instructed the jury regarding the offenses of murder first degree, murder second degree, voluntary manslaughter, and involuntary manslaughter.

We have examined the charge given by the trial judge and find that it includes a full and complete explanation of the law governing the offenses of voluntary manslaughter and involuntary manslaughter, the substance of the special request. Consequently, the trial judge did not commit error in refusing to give the defendant's special request. *Bostick v. State,* 210 Tenn. 620, 360 S.W.2d 472, 477 (1962); *Douglas v. State,* 213 Tenn. 643, 646, 378 S.W.2d 749, 750 (1964); *Edwards v. State,* 540 S.W.2d 641, 649 (Tenn.1976), cert. den. 429 U.S. 1061, 97 S.Ct. 784, 50 L.Ed.2d 777 (1977); *State v. Lane,* 673 S.W.2d 874, 876 (Tenn.Crim.App.1984).

This issue is without merit.

### DE NOVO REVIEW OF SENTENCE

When the defendant challenges the length, range, or manner of service of a sentence, it is the duty of this Court to conduct a *de novo* review of the sentence without a presumption of correctness. T.C.A. § 40-35-402(d). *State v. Moss,* 727 S.W.2d 229 (Tenn.1986).

█ In conducting a *de novo* review of a sentence this Court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the defendant in his own behalf, and (h) the defendant's potential or lack of potential for rehabilitation or treatment. See T.C.A. §§ 40-35-103 and 210. See *State v. Smith,* 735 S.W.2d 859, 863 (Tenn.Crim.

App.1987); *State v. Scott,* 735 S.W.2d 825, 820 (Tenn.Crim.App.1987); *State v. Rhoden,* 739 S.W.2d 6, 16 (Tenn.Crim.App. 1987).

█ The defendant was thirty-two (32) years of age when he was sentenced. He is married and the father of one child. He had been separated from his wife for approximately one year. While the defendant's formal education ended after his sophomore year of high school, he subsequently obtained his GED. He has been employed on an irregular basis as a laborer for a masonry contractor. The defendant served three years in the United States Army and received an honorable discharge. Like too many people today, he is the product of a broken home. His parents were divorced when he was four years of age.

The evidence contained in the record establishes that the defendant is an alcoholic and has a drug addiction. He testified he frequently used marijuana and consumed Valium. These conditions have existed for approximately fifteen (15) years. He contends there were two years when he did not abuse alcohol or controlled substances.

The trial court properly sentenced the defendant as a standard offender. He does not qualify as an especially mitigated offender. The State did not file a notice seeking to enhancement punishment prior to trial. T.C.A. § 40-35-202(a); *State v. Pender,* 687 S.W.2d 714, 719–720 (Tenn. Crim.App.1984). Moreover, the defendant does not qualify as a persistent offender nor does the offense qualify as an especially aggravated offense.

There are several enhancement factors present. The defendant has a previous history of criminal convictions and criminal behavior. T.C.A. § 40-35-111(1). The defendant has been convicted of driving while under the influence on two occasions, a violation of the driving license laws, and he has had several arrests and prosecutions, which were apparently retired. The offenses included public drunkenness, assault, assault and battery, aggravated assault, and other traffic offenses. The defendant admitted during the trial he was a

frequent user of marijuana and Valium, both controlled substances. The personal injuries inflicted upon the victim were particularly great. T.C.A. § 40–35–111(6). He murdered the victim. The defendant had no hesitation about committing a crime when the risk to human life was high. T.C.A. § 40–35–111(10). In addition, the victim was particularly vulnerable because he was not armed and was without means to either escape or defend himself from the wrath of the defendant. See T.C.A. § 40–35–111(4). While the defendant employed a firearm during the commission of the offense, we do not consider this as an enhancement factor since the sentence has been enhanced pursuant to T.C.A. § 39–6–1710(a)(1).

The defendant contends that there are five (5) mitigating factors present. We disagree. Our review of the record reveals the existence of only one (1) mitigating factor.

■ The defendant did not act under strong provocation. T.C.A. § 40–35–110(3). The victim attempted to prevent the defendant from shooting into the home of another, the defendant challenged the victim, and, subsequently, went to his truck, obtained his shotgun, and opened fire upon the victim.

■ Substantial grounds did not exist when tended to excuse or justify the defendant's criminal conduct, though failing to establish a defense. T.C.A. § 40–35–110(4). The record is replete with evidence that the conduct of the defendant was inexcusable and not justified. The defendant was not suffering from a mental or physical condition that significantly reduced his culpability for the offense. While the defendant contends he was drunk and does not remember certain events of the day, his own friends and companions established that he was under the influence, not drunk, and knew what he was doing when he shot the victim. Furthermore, the defendant's own testimony establishes that he was aware of his conduct on the date in question, including looking for his wife and child, his discussions with Hubert Jackson, Ronnie Laws and Laws' wife, contacting his brother about the shotgun, finding his child, shooting at the rear window of his wife's car, cutting and threatening to kill his wife's paramour, and what occurred immediately before and during his attack upon the victim.

■ The defendant did not commit the offense under such unusual circumstances that it was unlikely that a sustained intent to violate the law motivated his conduct. T.C.A. § 40–35–110(12). As has been stated above, the defendant challenged the victim, the victim accepted the challenge, and the defendant obtained his shotgun from his truck. The defendant had an opportunity to leave the premises when he went to his truck, following the first shot from the shotgun, and following the second shot. Instead, the defendant continued to carry the challenge to the victim. On the other hand, the victim never advanced towards the defendant or committed any act which threatened the defendant.

The defendant has expressed remorse for what occurred. This is a mitigating circumstance. T.C.A. § 40–35–110(13).

The sentence imposed by the trial court is appropriate, and we adopt the sentence. The sentence imposed is no greater than that deserved for the offense committed by the defendant, T.C.A. § 40–35–103(2); and it is the least severe measure necessary to achieve the purposes for which it was imposed. T.C.A. § 40–35–103(4).

The defendant represents a danger to society and should be confined for an extended period of time. See T.C.A. § 40–35–103(1)(A). The defendant admitted he fired the shotgun at the vehicle of his wife, went into the home of his wife's paramour and cut him with a knife, threatened his best friend with a knife, and operated a motor vehicle while under the influence of an intoxicant as well as a narcotic on the day of the killing. He has a history of arrests for assault, assault and battery, and aggravated assault.

Confinement for an extended period of time is also necessary to avoid deprecating the seriousness of the offense. T.C.A. § 40–35–103(1)(B). When a human life is

taken, the offense is extremely serious; and the sentence should be of sufficient length to punish the defendant as well as provide an effective deterrent to others likely to commit similar offenses. T.C.A. § 40–25–103(1)(B). The citizens of this State must understand and appreciate that the taking of a life without just cause or provocation will result in a lengthy sentence.

Unfortunately, the record indicates the defendant lacks the characteristics, traits and desire necessary for one to rehabilitate himself. T.C.A. § 40–35–103(5). His arrests and convictions span a period of eleven years. He admits he is an alcoholic. As heretofore noted, this problem has existed for fifteen years. He abstained for only two years during this period of time. He confesses to the frequent use of marijuana. He also confesses to the frequent use of Valium. The counseling he received for his alcohol and drug addictions apparently has not aided the defendant in conquering his problem.

The judgment of the trial court is affirmed.

DAUGHTREY and REID, JJ., concur.