# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### August 2000 Session

## STATE OF TENNESSEE v. JUSTIN VICTORY

### Direct Appeal from the Criminal Court for Davidson County
### No. 99-C-1756     Steve R. Dozier, Judge

---

### No. M2000-00015-CCA-R3-CD - Filed September 15, 2000

---

The defendant, Justin Victory, entered a plea of guilty to the offense of aggravated burglary before the Davidson County Criminal Court.  Pursuant to the plea agreement, the defendant was to receive a sentence of four (4) years, with the manner of service to be determined by the trial court. Following a sentencing hearing, the trial court denied the defendant's request for an alternative sentence and ordered the defendant to serve the sentence in the Davidson County CCA.  Also, the trial court advised the defendant that upon completion of the Life Lines Substance Abuse Program, the trial court would suspend the balance of the sentence and determine proper restitution.  In this appeal of right, the defendant complains that the trial court erred in denying him supervised probation.  After a review of the record, the briefs of parties and applicable law, we modify the manner of the service of the defendant's sentence to 214 days incarceration with the remainder served on supervised probation.

### Tenn. R. App. P. 3; Judgment of the Criminal Court is Modified.

L. TERRY LAFFERTY, SR. J., delivered the opinion of the court, in which JERRY L. SMITH, J., and JOE G. RILEY, J.,  joined.

James Holt Walker, Nashville, Tennessee, for the appellant, Justin Victory.

Paul G. Summers, Attorney General and Reporter and Elizabeth T. Ryan, for the appellee, State of Tennessee.

### OPINION

### BACKGROUND

The record reflects that on October 28, 1999, the defendant entered a negotiated plea of guilty to the offense of aggravated burglary and agreed to the sentence of four (4) years incarceration with a request for a sentencing hearing.  As part of the plea agreement, the State would dismiss a second count of theft over sixty thousand dollars ($60,000).  However, the record does not contain a

transcript of the guilty plea proceedings. The underlying facts surrounding the aggravated burglary charge are set forth in the pre-sentence report, Exhibit 1:

> On 4/22/99, Jeffrey Mendelsohn drove the defendant, Justin Victory, to the residence of Carolyn Linder, 211 Riverstone Court, Nashville. The defendant had been advised by Hugo Saledo that Ms. Linder had a large amount of jewelry in her house. Mr. Saledo told the defendant that the jewelry would be in a clear plastic container in a downstairs closet. The defendant kicked in the door and stole the jewelry. Mr. Mendelsohn drove the defendant to an unknown location in Hermitage and then drove home. The defendant was arrested on 5/27/99 and charged with aggravated burglary and theft. He did not make bond on this offense.

### SENTENCING HEARING

At the sentencing hearing, Ms. Carolyn A. Lender, testified that her home was burglarized and over $150,000 in jewelry was taken from a bedroom closet. Some jewelry was recovered, but approximately $150,000 in jewelry was not recovered. At the time of the burglary, the victim's nineteen year old daughter and handicapped sister lived in the home. Ms. Lender described the burglary as being very emotional and it caused her a lot of emotional stress. As a result of the burglary, the victim has difficulty leaving her home even to the extent of walking her dog. Because of the burglary, her handicapped sister who suffers with seizures, has been in and out of the hospital five times. She stated that she can no longer live in her home and that she will be re-locating. Ms. Lender testified that she did not have insurance to cover the loss of her jewelry.

Mr. James Victory, father of the defendant, testified that he is presently a sales person for Mid-South. He served as a police officer for three years in Rutherford County. He stated that he and the defendant's mother were married for ten years before their divorce. He testified that the defendant was a good child although the defendant had a learning disability. Mr. Victory stated that the defendant was a good student and excelled at basketball in high school. He stated that his son attended McGavock High School, where the defendant began associating with gang members and using drugs. The father believes that he is to blame for not taking a stronger hand in dealing with his son's problems in high school. At the time of the sentencing hearing, Mr. Victory stated that his son has spent two hundred fourteen (214) days in the Davidson County jail, where he saw the defendant every Saturday. Upon his son's arrest, the defendant portrayed himself as a victim and blamed others for his predicament. However, over time, the defendant has matured and taken responsibility for his part in the offense.

Mr. Victory testified that if given probation, he has arranged for his son to enter and complete a drug treatment program at Buffalo Valley Inpatient Drug & Alcohol Center. Further, his son would have employment upon release and that the defendant would live with him as a condition of the probation. Mr. Victory identified other family members who were present and in support of the defendant's application for supervised probation. The father assured the trial court that he would

-2-

be the first person to report any violation of probation committed by his son. Mr. Victory, on behalf of the family, apologized to Ms. Lender for the crime.

On his own behalf, the defendant testified that he met Mr. Saledo, who advised him of the home and the jewelry therein. The defendant solicited the help of Jeffrey Mendelsohn in committing the burglary. The day before the burglary, the defendant and Mendelsohn went by the victim's home, but they got scared and "chickened-out." The defendant was up all night after consuming LSD. The next morning, the defendant and Mendelsohn went to the victim's house. The jewelry was in the place where it was supposed to be, as told to him by Saledo. Afterwards they met Saledo and gave him the jewelry. They later met at the apartment of Amy Lovette. The following day, they pawned some of the jewelry for money to travel to Texas. Saledo told the defendant about going to Texas, how to dispose of the jewelry, how much fun it would be, and about women and drugs. The defendant stated that he was arrested in Texas. As to his drug use, the defendant testified that he began using drugs around age fourteen (14). He started out using marijuana and progressed to cocaine and the heavy use of alcohol. He stated that he had used marijuana and cocaine on the day of his arrest in Texas. At the time of the hearing, the defendant had been incarcerated for 214 days. The defendant testified:

> "I've learned that this really wasn't me the whole time. I mean, I -- I've reflected on it, the upbringing my parents have given me and taught .... I mean, I -- the whole time I've been acting like, really, a big kid. And, being in jail, being incarcerated these two hundred and fourteen days, is kind of a wake up call. It's time for me to stop and to step up and be a man."

The defendant stated how sorry he was for the burglary and for what he had put the victim and her sister through. The defendant offered to work two jobs to make complete restitution. The defendant testified that he would enter a drug treatment program at Buffalo Valley and hopes to get back into basketball by attending school. Also, the defendant has a job waiting for him upon his release with Southern Hospitality Corporation.

During cross-examination, the defendant stated that he could not get into Starting Point because they were full at the time. Also, the defendant stated that if he had known, he could have signed up for New Avenues and did it when he was bound over. As to any NA or AA meetings, the defendant stated that they had just started the sign-up sheet two weeks prior, and that classes had not yet started.

When questioned by the trial court, the defendant testified that he got approximately two thousand dollars ($2,000) from the burglary. As to his juvenile record, the defendant related that he was arrested at age fourteen (14) for shoplifting, and did forty-eight (48) hours on weekends in Williamson County. He also did six (6) months on probation for passing bad checks at age sixteen (16). The defendant denied being a member of the Gangster Disciples, but admitted he was guilty of hanging around with them.

-3-

The trial court, in its ruling, sentenced the defendant to the agreed upon four year sentence, provided that if the defendant completed the Life Lines Program, the trial court would let him out. In denying supervised release, the trial court expressed concern that Buffalo Valley could not satisfy the defendant's significant drug problem. Also, the trial court expressed concern over the defendant's involvement, the seriousness of this particular burglary, and that persons have been killed in home burglaries, but not in this case.

## LEGAL ANALYSIS

The defendant asserts that the trial court erred in imposing confinement for the conviction of aggravated burglary; that the trial court erred in confining the defendant in the absence of proof to rebut the presumption that a sentence other than incarceration would result in successful rehabilitation; and that the trial court erred in confining the defendant despite mitigating factors and the trial court's reliance on an inappropriate enhancement factor. The State counters that the trial court correctly imposed a sentence of confinement.

When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a *de novo* review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the pre-sentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any mitigating and statutory enhancement factors; (f) any statements made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. *See Thomas v. State,* 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988); Tenn. Code Ann. § 40-35-102,-103,-210.

If our review reflects that the trial court, by following the statutory sentencing procedure, imposed a lawful sentence, after having given due consideration and proper weight to the factors and principles which are set out under the act, and that the trial court's findings of fact are adequately supported in the record, then we may not disturb the sentence even if we would have preferred a different result. *State v. Fletcher,* 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

After a review of the transcript of the sentencing hearing, we find that the trial court denied an alternative sentence in that the seriousness of the offense justified incarceration and that the defendant had a significant drug problem that could not be handled by Buffalo Valley. However, the record does not reveal that the trial court considered any of the other sentencing factors. Accordingly, we review the sentencing decision *de novo* without the presumption of correctness.

The defendant contends on appeal that he is exactly the type of individual for whom the rebuttal presumption was enacted. Tenn. Code Ann. § 40-35-101. The State counters that the defendant has failed to meet his burden of establishing his suitability for probation. Tenn. Code Ann. § 40-35-303(b).

In his request for an alternative sentence, the defendant points out that he was nineteen (19) years old at the time of the offense, had two juvenile findings of delinquency for misdemeanor offenses, and no adult convictions. The defendant has no history of violence, but developed a serious drug abuse problem at an early age, and he associated with the "wrong crowd." The defendant submitted a drug treatment program for the trial court's consideration and had full-time employment awaiting him upon supervised release. Likewise, the defendant's genuine remorse at the sentencing hearing and offer to make restitution supports his candidacy for some form of supervised release. Against this evidence, the trial court believed that incarceration was the proper remedy.

A defendant who "is an especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). Our sentencing law also provides that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration." Tenn. Code Ann. § 40-35-102(5). Thus, a defendant sentenced to eight (8) years or less who is not an offender for whom incarceration is a priority, is presumed eligible for alternative sentencing unless sufficient evidence rebuts the presumption. Because the defendant is a Range I offender, who has pled guilty to aggravated burglary, a Class C felony, he is presumed to be a favorable candidate for alternative sentencing. *See Id.* § 40-35-102(6).

Tennessee. Code Annotated § 40-35-103(1) sets forth guidance as to what "constitutes evidence to the contrary.":

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

*See State v. Ashby,* 823 S.W.2d at 170; *State v. Neely,* 1 S.W.3d 679, 685 (Tenn. Crim. App. 1999).

With respect to the seriousness of the offense, the trial court found that the defendant played a lead role in the commission of the burglary, a large amount of valuable jewelry was taken, and that people have been killed in home burglaries. However, this Court in *State v. Bingham:*

> In order to deny an alternative sentence based on the seriousness of the offense, "the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree," and the nature of the offense must outweigh all factors favoring a sentence other than confinement.

910 S.W.2d at 454 (Tenn. Crim. App. 1995). Here, the defendant did commit an invasion into the home of the victim and took a large amount of valuable jewelry. However, nobody was injured and apparently the home was not vandalized. Accordingly, we do not find that the presumption of an alternative sentence has been rebutted by the seriousness of the offense. As to the trial court's denial of an alternative sentence based on Buffalo Valley's inability to cope with the defendant's serious drug problem, the trial court did not state specific reasons as to why this treatment program was not adequate. Thus, we do not find the presumption of an alternative sentence has been rebutted by this finding.

Having found that the presumption of alternative sentence has not been rebutted, we must now determine which sentencing alternative is appropriate. Because the defendant's sentence was under eight (8) years and because the defendant is not otherwise disqualified, he is eligible for probation under our statutory system. *See Id.* Tenn. Code Ann. § 40-35-303. Probation is to be automatically considered as a sentence alternative for eligible defendants; however, "the defendant is not automatically entitled to probation as a matter of law." *State v. Hartley,* 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991) (quoting Tenn. Code Ann. § 40-35-303 sentencing comm'n comments). The burden of proving probation rests with the defendant. *See* Tenn. Code Ann. § 40-35-303(b). If the trial court determines that a period of probation is appropriate, it shall sentence the defendant to a specific sentence but shall suspend that sentence and place the defendant on supervised or unsupervised probation either immediately or after a service of a period of confinement. Tenn. Code Ann. § 40-35-303(c). Placement on probation following the service of a period of confinement is an alternative to a "straight time" sentence and is commonly referred to as "split confinement." *State v. Lane,* 3 S.W.3d 456, 464 (Tenn. 1999).

In determining whether to grant probation, the trial court must consider: (a) the defendant's criminal record; (b) his background and social history; (c) his present condition, including his physical and mental condition; (d) the nature and circumstances of the offense; (e) the deterrent effect on other criminal activity; and (f) the likelihood that probation is in the best interest of both the public and the defendant. *State v. Bonestel* 871 S.W.2d 163, 169 (Tenn. Crim. App. 1993). Also, the trial court is obligated to consider the potential for rehabilitation or treatment of the defendant in determining the sentence alternative. Tenn. Code Ann. § 40-35-103(5).

At the time of the sentencing hearing, the defendant was nineteen (19) years old. He had no other criminal history except for two juvenile offenses. Upon release, the defendant has a twenty-eight (28) day in-house treatment program at Buffalo Valley Drug Treatment Center and full-time employment. The defendant has strong family support and expressed complete remorse for the burglary of the victim's home. Also, the defendant has expressed his desire to make complete restitution by working two jobs. The defendant has no history of violent acts, other than his self-destruction through the use of drugs. To counter this evidence, the defendant has a long history of drug abuse, no past indication of an attempt at treatment, little employment history, was on LSD at the time of the burglary, and pawned the jewelry to obtain funds to go to Texas to live the good life, "doing drugs and women." The defendant received two thousand dollars ($2,000) for his part in the burglary, and convinced a friend to become involved in this criminal offense. The defendant has not received or taken advantage of any drug treatment programs while in custody.

We conclude from our review of the record, that the defendant should be placed on probation in that he has served two hundred fourteen plus (214+) days in incarceration since the commission of the offense. This amounts to split confinement. We believe that this sentence is the least severe measure necessary to achieve the purposes of punishment and rehabilitation, and it also conserves resources because the defendant will not serve his entire sentence in incarceration. See *State v. Bingham,* 910 S.W.2d at 457. We find that the trial court's denial of an alternative sentence, based on his completing a drug program, Life Lines, while in custody, intriguing. The trial court failed to set out in the record as to just what this drug treatment program is, what the consequences are and how such drug treatment would benefit the defendant. In the absence of such record, we must modify the defendant's four year sentence to be served in split confinement for two hundred fourteen (214) days followed by supervised probation. The case is remanded to the trial court to determine the terms and conditions of probation.

_____
L. TERRY LAFFERTY, SENIOR JUDGE