IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 20, 2000

## STATE OF TENNESSEE v. BEVERLY K. MEEKS

**Appeal from the Circuit Court for Marshall County**
**No. 13880     Charles Lee, Judge**

_____

**No. M2000-00435-CCA-MR3-CD - Filed December 28, 2000**

_____

The Defendant, Beverly K. Meeks, entered best interest guilty pleas to charges of child neglect, a Class D felony, and resisting arrest, a Class B misdemeanor. She received agreed sentences of three years for child neglect and three months for resisting arrest, with the sentences to be served concurrently. The manner of service of those sentences was to be determined by the trial court. After a sentencing hearing, the trial court ordered the Defendant to serve her sentences in confinement. In this appeal as of right, the Defendant argues that the trial court erred by denying her an alternative sentence. She asserts that she should have been placed on community corrections. We find no error; accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOE G. RILEY and NORMA MCGEE OGLE, JJ., joined.

Andrew Jackson Dearing, III, Shelbyville, Tennessee, for the appellant, Beverly Meeks.

Paul G. Summers, Attorney General and Reporter; Marvin E. Clements, Jr., Assistant Attorney General; Mike McCowen, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee

**OPINION**

The proof offered at the Defendant's plea hearing and her sentencing hearing established that on March 1, 1999, at approximately 8:47 p.m., the police were dispatched to the home of the Defendant and her friend, Lisa Wheeler, with whom the Defendant had lived for nineteen years. When an officer arrived, he found the Defendant walking down the street carrying a baby. The baby was wrapped in a blanket, but the officer observed that the Defendant had only "one shoe on, mud on her clothes, very poor balance, and a slurred speech." When the officer offered his assistance, the Defendant attempted to run away. The officer forced the Defendant to let him see the baby, and

he discovered that the baby appeared to have been face down in a muddy area. Fearing for the baby's welfare, he called for backup and forcibly removed the baby from the Defendant's arms. As he was attempting to take the baby, the officer could hear the baby's air supply being cut off, and he could see that the baby was slightly blue.

Neighbors told the officer at the scene that they heard talking and a loud noise that sounded like a cat. Upon investigation, they discovered the Defendant carrying a small baby. The baby was wearing only a tee shirt and a diaper, and she was very cold. They gave the Defendant a blanket to wrap around the baby. The Defendant fell into some shrubs and stumbled into the street while carrying the baby.

The baby was taken to a hospital, where she was diagnosed with hypothermia. The doctor noted that the baby was filthy; she had dirt all over her face and body, and she had stool in her diaper. The baby was released to the custody of the Department of Children's Services.

The Defendant gave two different statements, and she testified at the sentencing hearing. On March 2, 1999, after waiving her rights, the Defendant gave a statement to the police and Renee Bouchillion, an employee of the Department of Children's Services. In that statement, she said she was taking care of Lisa Wheeler's eight month old daughter while Ms. Wheeler was at work. About 5:00 p.m., a "drug pusher" came by the house where the Defendant lived with Ms. Wheeler and the baby, and the Defendant bought five "soma's" from the pusher. She said that she took a pill at that time because she was in pain, and then she took another pill a couple of hours later. Around 7:00 p.m., she fed Miya, the baby, and played with her. The Defendant said that she remembered drinking coffee after that, but she only remembered "bits and pieces" of anything else that happened. The Defendant further said that her doctor had given her prescriptions for Prozac and Lortabs, but she had only taken the Prozac that day.

On May 21, 1999, the Defendant gave another statement to Judy Byrd, an employee of the probation department. In that statement, the Defendant said that she fed the baby around 7:30 or 8:00 p.m., and sometime after that she took a Prozac pill because she was depressed. She said that about thirty minutes later she realized she did not feel "right," so she went to a neighbor's house to call the baby's mother to come home. She said she was afraid "something was going to happen." She barely remembered the neighbor giving her a blanket for the baby. She admitted trying to stop the police from taking the baby. She said, "The cops had already taken Lisa's little boy and when I saw them I [w]as afraid they were going to take the baby also. I never intended to hurt the baby. I'm truly sorry this happened."

At the sentencing hearing, the Defendant admitted that she had previously received some form of alternative sentencing for three prior offenses. She also admitted that she had a drug problem and that she "knew better" than to take drugs while being around children. Because of her relationship with Lisa Wheeler, the Defendant had taken parenting classes offered by the Department of Children's Services. The Department of Children's Services had suggested that the Defendant take parenting classes after Ms. Wheeler's first child was removed from the home. In addition, the

Defendant said that she lied to the Department of Children's Services employee and the police officer when she gave her statement on March 2, 1999. She said that she was confused when she gave that statement. She testified that she did not purchase drugs from the drug pusher because she did not have any money to do so.

Renee Bouchillion, the Children's Services employee, testified at the sentencing hearing that the Defendant had previously been identified by the Department of Children's Services as an "indicated perpetrator." She explained that this meant while the Defendant had not been charged with a criminal offense, the Department believed that it was dangerous for the Defendant to be around a child. The Department reached this conclusion due to an earlier incident involving the Defendant and Ms. Wheeler. The police were called to their residence, where they found both Ms. Wheeler and the Defendant intoxicated and "passed out." Ms. Wheeler's fourteen-month-old son was discovered on the floor playing with pills that contained codeine. As a result of this incident, Ms. Wheeler's son was removed from the home, and both Ms. Wheeler and the Defendant were asked to take parenting classes, which they did. Ms. Wheeler was charged with a criminal offense because she was the child's mother, but the Defendant was not charged at that time.

The presentence report reflected that the Defendant was forty-four years old, single, and receiving disability income. She suffered from osteo-arthritis and degenerative deteriorating disorder of the spine. The Defendant also reported that she had been receiving counseling for at least five years, and she said that her mental diagnosis was borderline personality disorder, clinical depression, and self-medication. Although the Defendant had been prescribed various medications, she was not taking any medications at the time of the presentence report. She admitted having problems with prescription medications, but denied using alcohol. The Defendant reported that she dropped out of high school in the tenth grade. The Defendant had no prior felony convictions, but she had three prior convictions for public intoxication, two convictions for driving under the influence of an intoxicant, two convictions for driving with a revoked license, and one burglary related conviction.

After hearing the evidence, the trial court determined that the Defendant was not entitled to the presumption of being a favorable candidate for alternative sentencing because she "has shown a disregard for the laws and morals of society," because past efforts at rehabilitation have proven unsuccessful, and because this is a "severe offense." The trial court further found that the Defendant had committed two of her prior offenses while she was on probation for another offense. The court noted that although the Defendant had participated in parenting classes, she still neglected the child. It found this significant as it related to the Defendant's potential for rehabilitation or treatment. The trial court also found that confinement was necessary to avoid depreciating the seriousness of the offense. In so doing, the court commented that the child had been through a "real risk of death" and that but for the intervention of members of the general public, this could have been an even more serious case. In addition, the court found that confinement was particularly suited to provide an effective deterrent for others likely to commit similar offenses, especially those who, like the Defendant, had come to the attention of the Department of Children's Services. Accordingly, the trial court denied any form of alternative sentencing and ordered the Defendant to serve her sentences in confinement.

When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988); Tenn. Code Ann. §§ 40-35-102, -103, -210.

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

A defendant who "is an especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). Our sentencing law also provides that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration." Id. § 40-35-102(5). However, the act does not provide that all offenders who meet the criteria are entitled to alternative sentencing; rather, it requires that sentencing issues be determined by the facts and circumstances presented in each case. See State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987) (citing State v. Moss, 727 S.W.2d 228, 235 (Tenn. 1986)).

The trial court determined that the Defendant was not entitled to the presumption of an alternative sentence because she committed a severe offense, her actions evinced a clear disregard for the laws and morals of society, and past efforts at rehabilitation had proved unsuccessful. We cannot conclude that the evidence preponderates against this determination. The Defendant was convicted of child neglect, a Class D felony. See Tenn. Code Ann. § 39-15-401(a). While a Class D felony is not among the most serious offenses, this offense as committed was serious. The victim was an eight-month-old baby with no ability to care for herself. The baby was diagnosed with hypothermia as a result of the Defendant's neglect. Although the Defendant had not been previously charged with a criminal child abuse offense, the Department of Children's Services had indicated that the Defendant was a "potential perpetrator," and it had requested that the Defendant take parenting classes. The Defendant completed the parenting classes, but those efforts at rehabilitation

proved unsuccessful. The Defendant knew she had a drug problem and that she should not be around children when taking drugs. She had multiple previous convictions for driving under the influence and public intoxication. However, she took drugs on the day in question and endangered the life of a small baby. Thus, we cannot find that the evidence preponderates against the trial court's determination that the Defendant is a felon for whom incarceration is a priority.

Furthermore, even if the Defendant was entitled to the presumption of alternative sentencing, we believe that the presumption was rebutted. Guidance regarding what constitutes "evidence to the contrary" which would rebut the presumption of alternative sentencing can be found in Tennessee Code Annotated § 40-35-103(1), which sets forth the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct.
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

See also Ashby, 823 S.W.2d at 170; State v. Neely, 1 S.W.3d 679, 685 (Tenn. Crim. App. 1999). Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. Tenn. Code Ann. § 40-35-103(3)-(4). The court should also consider the potential for rehabilitation or treatment of the defendant in determining the sentence alternative. Id. § 40-35-103(5).

Here, although the Defendant has no prior felony offenses, she does have eight prior misdemeanor convictions, five of which involved intoxication. She admitted having a problem with prescription drugs. While she was not charged with a criminal offense, her drug usage helped precipitate the removal of Ms. Wheeler's son from their home. Thus, we believe that confinement is necessary to protect society by restraining this Defendant who has a long history of criminal conduct.

In addition, confinement is necessary to avoid depreciating the seriousness of the offense and to provide an effective deterrence. In State v. Bingham, 910 S.W.2d 448 (Tenn. Crim. App. 1995), we stated,

> In order to deny an alternative sentence based on the seriousness of the offense, "the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree," and the nature of the offense must outweigh all factors favoring a sentence other than confinement.

Id. at 454 (quoting State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991)). The circumstances of this offense were particularly reprehensible in that the Defendant intentionally took

prescription medication, even though she "knew better," and then proceeded to expose a small baby to the elements. The baby was wearing only a tee shirt and a diaper in cold weather. As a consequence, the baby was diagnosed with hypothermia. The Defendant's actions are even more offensive because Ms. Wheeler's first child had already been taken by the Department of Children's Services, and the Defendant had completed parenting classes as a result. Also, while the facts presented at the sentencing hearing regarding the need for deterrence may not have been so strong as to justify a denial of alternative sentencing based solely on deterrence, see State v. Hooper, __ S.W.3d __, __ (Tenn. 2000), we do believe that specific deterrence is a factor to consider as it relates to the Defendant's potential for rehabilitation. In Hooper, the supreme court recognized that a factor to consider in determining whether there is a need for deterrence is whether the defendant has previously engaged in criminal conduct of the same type, irrespective of whether the conduct resulted in previous arrests or convictions. See id. at __. Here, the Defendant's prior uncharged criminal conduct endangered the welfare of Ms. Wheeler's son, who was subsequently removed from their home. Thus, we think deterrence is a consideration in this case.

In addition, confinement is necessary because measures less restrictive than confinement have been unsuccessfully applied to the Defendant. The Defendant admitted that she had received some form of alternative sentencing on three prior occasions. The trial court noted that she committed two offenses while she was on probation for another offense. Obviously, the prior alternative sentences have not deterred the Defendant from committing criminal offenses.

Accordingly, we conclude that the trial court properly denied the Defendant alternative sentencing. The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE