# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs October 17, 2000

## STATE OF TENNESSEE v. NICHOLAS ROBERTS BROWN

**Appeal from the Circuit Court for Sevier County**
**No. 7624     Richard R. Vance, Judge**

---

**No. E1999-00110-CCA-R3-CD**
**December 15, 2000**

---

The Defendant, Nicholas Roberts Brown, pleaded guilty to one count of statutory rape. Pursuant to his plea agreement, he received a sentence of one year, with the manner of service of the sentence to be determined by the trial court. After a sentencing hearing, the Defendant was ordered to serve sixty days in jail, with the remainder of his sentence to be served in community corrections. In this appeal as of right, the Defendant argues that he should have been placed on immediate probation. We hold that the Defendant failed to establish his suitability for full probation, but we modify the his sentence to sixty days incarceration followed by supervised probation because the Defendant is statutorily ineligible to participate in the community corrections program. The case is remanded for the trial court to determine the conditions of probation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Modified and Case Remanded.**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, J. and WILLIAM B. ACREE, SP.J., joined.

Edward C. Miller, Public Defender, Dandridge, Tennessee, for the appellant, Nicholas Roberts Brown.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Al Schmutzer, Jr., District Attorney General; and Steven Hawkins, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

The charges in this case arose from the nineteen-year-old Defendant's consensual sexual relationship with a fourteen-year-old girl, J.R.[1]  At the Defendant's plea hearing, the State recited the following facts underlying the offense:

> [S]ometime back in 1998 this defendant . . . was having problems with his home life, he was allowed to move into the [victim's] home.  The father explained to him that a fourteen year old, his fourteen year old daughter also lived there and told him under no certain terms that he should leave her alone and he didn't expect anything untoward to come of him staying in the home because they wanted to give him a place to stay.
>
> Despite those warnings, if the Court please, this defendant, the proof would show, began having sexual relations with her.  This defendant was nineteen years of age and [she] was fourteen years of age and they had sexual relations several times for months after that until finally it was able to be put a stop to.  She's presently pregnant and due in August with his baby.

By the time of the sentencing hearing, J.R. had given birth to a boy, who was nine weeks old.

J.R.'s father, Curtis Rumbaugh, testified at the sentencing hearing that the Defendant was a "friend of the family," and he had told the Defendant that the Defendant and J.R. "could be friends but that was as far as they could go."  Mr. Rumbaugh discovered that J.R. and the Defendant had had sexual intercourse when J.R. ran away from home because she was pregnant.  Mr. Rumbaugh further testified that the Defendant had made no arrangements to help support the baby and that the Defendant denies that the baby is his.

J.R. testified that she had sexual relations with the Defendant on many occasions and that the Defendant knew she was only fourteen.  She knew that the Defendant was nineteen.  She said she is certain that the Defendant is the father of her baby, but the Defendant denies it.  She further testified that she willingly engaged in sexual intercourse with the Defendant, and she was aware of the dangers of having unprotected sex.  She also admitted sending the Defendant multiple letters, in which she expressed her love for the Defendant and her anger at her father for pursuing criminal charges against the Defendant.

The Defendant did not testify at the hearing, but relied upon the presentence report.  The presentence report shows that the Defendant was nineteen years old at the time of the offense.  The Defendant graduated from high school, where he was a "low average" student.  At the time of sentencing, he was employed at Blalock Construction, earning $8.10 an hour.  Prior to that, he worked for Wal-Mart for over a year.  The Defendant was living with his parents and his sister.  He

---

[1] It is the policy of this Court to refer to minors by initials rather than by name.

denied any drug or alcohol use, and described his physical and mental health as "excellent." He had no prior criminal record.

The probation officer stated in the report that the Defendant "appears to be a low risk candidate for probation." However, the officer noted

that the Defendant appears to be avoiding responsibility for his actions. In his statement, the Defendant blames the victim's father. He wrote, "I was going to move out and he acted like he threw me out. A month later he presses charges on me. Because I was not paying him rent money anymore." The Defendant blames Mr. Rumbaugh for his situation and not the fact that he had a sexual relationship with a minor child.

Several letters written to J.R. by the Defendant were included in the presentence report. In one letter, the Defendant wrote,

Baby I have done a lot of thinking and came up with some way me and you can be together and not worry about the law. We get married and stay away from parent [sic] for awhile. You don't know how not right this is that your dad won't lets [sic] us see each other which is not right. You have my blood in you and my love of my life. That I would never cheat on ever because you are part of me that I'm missing.

In another letter the Defendant wrote, "I wish I could have been their [sic] for my kids [sic] heart beat and all the other stuff. I love you Baby and want you and our kid to be happy and that's not going to happen because of your dad." The Defendant also wrote, "I love you Baby and that could never change inside but do you in return love me then don't take the stand Honey that leaves them with no proof."

In sentencing the Defendant, the trial judge stated that a "substantial break was given in charging this young man" because each act of sexual intercourse could have been charged as a separate offense. The trial judge also stated that the letters written to J.R. by the Defendant encouraged J.R. not to testify, which could have resulted in charges for attempting to coerce or threaten a witness into not testifying. Thus, the judge determined that while multiple crimes were committed by the Defendant, he was only charged with one.

The trial judge found as enhancing factors that the offense was committed to satisfy the Defendant's desire for sexual pleasure, that the personal injury to the victim was great due to her pregnancy, and that the Defendant abused a position of private trust. The judge stated, "He'd been trusted to move into the Rumbaugh's home where this young lady lived, very susceptible. . . . Took advantage of a young lady who was fourteen years of age and who now bears his child for which he has taken no responsibility and shown no remorse whatsoever." The judge specifically noted, "Lack of remorse in this case is a major consideration." The court then sentenced the Defendant as follows:

[T]he Court having already sentenced you to one year does not feel that this is an appropriate case for deferred judgment and denies that petition for the reasons I've already stated. The Court feels that a period of incarceration is warranted for the same reasons I've already stated. . . .

The Court is going to order you to serve sixty days in the county jail, day for day, followed by the balance of that sentence being served in the Community Corrections Program.

On appeal, the Defendant argues that he should have been immediately placed on probation, rather than having to serve part of his sentence in incarceration. When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988); Tenn. Code Ann. §§ 40-35-102, -103, -210.

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

A defendant who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102. Our sentencing law also provides that "convicted felons committing the most severe offense, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration." Id. § 40-35-102(5). Thus, a defendant sentenced to eight years or less who is not an offender for whom incarceration is a priority is presumed eligible for alternative sentencing unless sufficient evidence rebuts that presumption. Because the Defendant is a Range I, standard offender who was convicted of a Class E felony and who does not have a prior criminal history, he is presumed to be a favorable candidate for alternative sentencing. See id. § 40-35-102(6).

While the Defendant is presumed to be a favorable candidate for alternative sentencing and while probation is to be automatically considered as a sentence alternative for eligible defendants, "'the defendant is not automatically entitled to probation as a matter of law.'" State v. Hartley, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991) (quoting Tenn. Code Ann. § 40-35-303 sentencing commission comments). The burden of proving suitability for probation rests with the defendant. See Tenn. Code Ann. § 40-35-303(b). In determining whether to grant probation, the judge must consider the nature and circumstances of the offense, the defendant's criminal record, his or her background and social history, his or her present condition, including physical and mental condition, the deterrent effect on other criminal activity, and the likelihood that probation is in the best interests of both the public and the defendant. See Stiller v. State, 516 S.W.2d 617, 620-21 (Tenn. 1974); see also State v. Michael, 629 S.W.2d 13, 15 (Tenn. 1982); State v. Bonestel, 871 S.W.2d 163, 169 (Tenn. Crim. App. 1993). Denial of probation may be based entirely on the circumstances of the offense when they are of such a nature as to outweigh all other factors favoring probation. State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995).

If the court determines that a period of probation is appropriate, it shall sentence the defendant to a specific sentence but shall suspend that sentence and place the defendant on supervised or unsupervised probation either immediately or after the service of a period of confinement. See Tenn. Code Ann. §§ 40-35-303(c), 40-35-306(a). A sentence of probation following a period of confinement is commonly referred to as "split confinement." See id. § 40-35-306(a).

The Defendant in this case was afforded the presumption of alternative sentencing in that he was given a sentence of split confinement. See State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999). He asserts, however, that he should have been granted full probation instead of having to serve a portion of his sentence in confinement. In arguing that he should have been granted full probation, the Defendant points to his lack of a criminal record, his stable employment, his youth, and his immaturity. He asserts that any "lack of acceptance" of his responsibility is due to his immaturity. Notwithstanding, we are unable to conclude that the trial court abused its discretion by refusing to grant full probation. The burden of proving suitability for full probation was on the Defendant, and the Defendant failed to meet that burden. In sentencing the Defendant, the trial court found the existence of three enhancement factors, which are not challenged by the Defendant. The trial court further relied upon the multiple acts of sexual intercourse and the Defendant's letters to J.R. asking her not to testify for the court's determination that the Defendant had committed criminal acts for which he was not prosecuted. The trial court specifically found that the Defendant's lack of remorse was a significant factor in its determination that a period of incarceration was appropriate. It appears that the trial court considered the sentencing principles and imposed a lawful sentence by ordering a period of confinement. Thus, we are compelled to uphold the sentence of sixty days incarceration.

However, we note that the Defendant was sentenced to community corrections following his period of incarceration, rather than to probation. Because the Defendant was convicted of a sexual

offense, he is not eligible to participate in the community corrections program.[2] <u>See</u> Tenn. Code Ann. § 40-36-106(a)(2); <u>State v. Boston</u>, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). We therefore modify the Defendant's sentence to sixty days incarceration followed by supervised probation, and we remand the case to the trial court to determine the conditions of probation.

 

 

 

 

                                    _____

                                    DAVID H. WELLES, JUDGE

---

[2]The statute provides an exception to this eligibility requirement for offenders who would usually be considered unfit for probation because of histories of chronic alcohol, drug abuse, or mental health problems but whose special needs are treatable and could best be served in the community rather than in a correctional institution. <u>See</u> Tenn. Code Ann. § 40-36-106(c). Because there is no evidence that the Defendant has any such special needs, this exception is inapplicable.