# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs August 21, 2001

## STATE OF TENNESSEE v. JOHN D. PASS

### Direct Appeal from the Criminal Court for Knox County
### No. 67179     Richard R. Baumgartner, Judge

---

### No. E2000-02266-CCA-R3-CD
### November 30, 2001

---

The defendant appeals from his conviction for aggravated assault and his sentence. We conclude that there was sufficient evidence to support the conviction for aggravated assault. The imposition of a six (6)-month jail term pursuant to a sentence of five (5) years in split confinement is appropriate. We affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

William C. Talman, Knoxville, Tennessee, for the appellant, John D. Pass.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Randall Eugene Nichols, District Attorney General; and Lauri Hays, Special Prosecuting Attorney; and Marsha Selecman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, John D. Pass, was indicted for aggravated assault in three alternative counts. Count One charged that the defendant caused serious bodily injury to the victim. Count Two charged that the defendant caused bodily injury to the victim by use of a deadly weapon. Count Three charged that the defendant caused the victim to fear imminent bodily injury by use of a deadly weapon. A jury found the defendant guilty of causing bodily injury by use of a deadly weapon, Count Two. The trial court sentenced the defendant as a Range I standard offender to five (5) years, to be served in split confinement. The trial court ordered the defendant to serve six (6) months in the county jail and to spend the remainder of the five (5) years on probation. A timely motion for new trial was denied by the trial court. The defendant filed a timely notice of appeal challenging the sufficiency of the evidence to sustain his conviction for aggravated assault and the imposition of a six (6)-month jail term pursuant to a sentence of split confinement.

**Facts**

The victim, James Daniel Davis, testified that he was drinking at Mary Jane's Place, a local bar in Knox County, when the defendant entered the bar. The defendant immediately approached the victim, who was seated at the bar, and called him a "son of a *****." Wishing to avoid a scene in front of the other bar patrons, the victim asked the defendant to go outside the bar so that they could talk privately. The victim believed that the defendant was angry with him because of an incident that occurred a month earlier. The victim claimed to have overheard the defendant making inappropriate comments to the bar owner's eight-year-old granddaughter and told the bar's owner what he heard.

Once outside, the defendant hit the victim in the head with a beer bottle. In response, the victim hit the defendant in the nose and knocked him to the ground. The victim kicked the defendant several times and told him to "stay down" and to leave him alone. The defendant told the victim that he was going to kill him, and the victim walked back inside the bar. After about ten minutes, the defendant also came back inside the bar. The victim told the bartender that he thought that the defendant had a weapon. The bartender patted down the defendant and told the victim that the defendant did not have anything.

A few minutes later, the victim felt a pain in his back. When he turned around, the defendant was standing behind him with a knife in his hand. The defendant and the victim struggled for a few minutes and the victim was cut on the arm and the face with the knife. The bartender assisted the victim by jumping over the bar and forcing the defendant outside by hitting him with a baseball bat. An ambulance was called to take the victim to the hospital, where he remained hospitalized for two days.

The bartender, John Riehl, also testified at trial. On the night that the victim was stabbed, he observed the defendant and the victim "having words" at the bar but could not hear what they were saying. Moments later, he saw both men go out the back door. A few minutes passed and then a customer told him that they were fighting outside. The bartender went outside where he found the defendant on the ground and the victim standing over him. The bartender told the victim that the defendant had "had enough" and to come back inside the bar. Both the bartender and the victim went back inside the bar.

The defendant came back into the bar a few minutes later and sat at a table behind the victim. The bartender instructed the two men not to talk to each other or they would have to leave. The defendant stayed a few minutes and then left the bar. The defendant returned to the bar twenty or thirty minutes later and the victim told the bartender that he believed the defendant had a weapon. The bartender searched the defendant for a weapon by patting him down but did not find any weapons. The bartender returned to the bar and continued to watch the defendant from behind the bar. A few minutes later, the bartender walked to the other end of the bar to serve a customer. As the bartender turned to walk back toward the victim, he saw the defendant stab the victim in the back with a knife. After the police arrived at the bar, the bartender found a knife with blood on it outside the bar.

Laray Hays, a bar patron on the night of the altercation, also testified for the state. She arrived with a friend and observed the victim and the defendant fighting outside the bar. She arrived after the fight had started but did see the victim strike the defendant in the face and knock him down. She also heard the victim tell the defendant to stay down as she was walking into the bar. Ms. Hays continued inside and sat at the bar. The victim came back inside and sat a few seats down from Ms. Hays at the bar. The defendant returned to the bar fifteen or twenty minutes later and sat at a table directly behind the victim. Ms. Hays saw the bartender check the defendant for weapons. She also heard the bartender say that the defendant did not have anything. After a few minutes, Ms. Hays saw the defendant stand up and approach the victim from behind. The victim did not see the defendant approaching and Ms. Hays did not hear them exchange any words. The defendant stabbed the victim in the right side of his back. The victim appeared stunned at first but then jumped up and ran after the defendant. A few minutes later the victim came back inside the bar, and Ms. Hays put towels on his wounds to stop the bleeding until an ambulance arrived.

Two police investigators, who spoke with the defendant, testified for the state. Officer Keith Debow of the Knoxville Police Department was called to the bar after the victim was stabbed. Officer Debow interviewed the victim before he was taken to the hospital. The victim told Officer Debow that the defendant stabbed him in the back. Officer Debow was also present at the bar when a knife with blood on it was found outside the back door of the bar. After learning from witnesses that the defendant lived near the bar, Officer Debow went to the defendant's home. The defendant was found sitting in a chair behind his house. Officer Debow observed that the defendant was "bloody and beaten" and called an ambulance to take the defendant to the hospital. Before the ambulance arrived, the defendant made a statement to the officer indicating that he had been in a fight with the victim and had gone back into the bar where he stabbed the victim one time.

Sergeant Tammy Hamlin of the Knoxville Police Department interviewed the defendant at the hospital. The defendant told Officer Hamlin that a knife fell out of the victim's pocket during their fight outside the bar. The defendant said that he picked up the knife after the victim went back inside the bar and waited for about ten minutes before he went back inside the bar. The defendant admitted to stabbing the victim in the back while his back was turned. The defendant told Officer Hamlin that he was planning to leave the victim's knife with him or in him. Officer Hamlin could not recall whether he said "with him" or "in him."

The defendant also testified at trial. The defendant worked as a bartender at the bar across the street and had previously worked as a bartender at Mary Jane's Place. He knew the victim from his work in the two bars. According to the defendant, he did not say anything to the victim when he first arrived at the bar. The defendant sat at a table by himself and the victim asked him to go outside. The victim ordered a bottle of Budweiser beer, which the defendant believed to be for him because he knew the victim to drink cans of Miller beer. He agreed to go outside with the victim, believing that they were going to smoke marijuana. Once outside, the victim hit him in the head with the beer bottle and "knocked his eye about out." The bottle broke and the victim "jabbed it in the top of [the defendant's] head." The defendant fell down

and the victim kicked him repeatedly.  After the victim went back inside the bar, the defendant took his tee shirt off and used it to stop the bleeding on top of his head.  He pushed his eye back into place, put on another shirt, and went back inside the bar.

The bartender searched the defendant when he entered the bar and did not find anything. The defendant denied having a knife with him when he entered the bar.  He also said that he did not remember telling Officer Hamlin that he picked up the victim's knife outside the bar.  The defendant sat at a table and drank a beer.  When he stood to leave, the victim turned toward him and asked if he "wanted some more of it."  The defendant testified that he did not want to be beaten by the victim again.  As he walked toward the door, "someone" in the bar tapped him on the leg.  He reached down, and "someone" placed a knife in his hand.  The victim started to stand, and the defendant put his arms around the victim and felt the knife go in the victim's back. He immediately pulled it out.  The victim began swinging his fists at him and cut himself on the knife, which the defendant still had in his hand.  The bartender jumped over the bar with a baseball bat, took the defendant outside and hit him with the bat in the chest, arms, and thighs. After the bartender stopped hitting him, the defendant went home and remained there until the police arrived.

## Analysis

The defendant raises two issues in this appeal: (1) whether there was sufficient evidence to sustain a conviction for aggravated assault, and (2) whether the trial court properly sentenced the defendant to five (5) years to be served in split confinement.

### Sufficiency of Evidence

The defendant contends that the evidence introduced at trial was not sufficient to prove the offense of aggravated assault.  The defendant does not point to a specific element of aggravated assault that the state failed to prove but asserts that he was acting in self-defense. Therefore, we will address both the sufficiency of the evidence to establish the elements of aggravated assault and the sufficiency of the evidence to establish that the defendant was not acting in self-defense.

The standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This Court may not reweigh or reevaluate the evidence but should presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Following the standard of review set out above, we conclude that the elements of aggravated assault were established in the instant case. The jury members were instructed that they could find the defendant guilty of aggravated assault as charged in Counts One, Two, or Three but could only convict the defendant of one count. The jury found the defendant guilty of Count Two. Therefore, to support the defendant's conviction for aggravated assault, the state was required to prove that the defendant knowingly caused bodily injury to the victim by using a deadly weapon pursuant to Tennessee Code Annotated sections 39-13-101(a)(1) and 102 (a)(1)(B).

There is ample evidence to support a finding that the defendant caused bodily injury to the victim by using a deadly weapon. The victim testified that he was sitting on a bar stool with his back to the defendant when he felt the defendant stab him in the back. The bartender testified that he saw the defendant stab the victim in the back with a knife. A bar patron testified that she saw the defendant approach the victim with a knife and stab him in the back. Two police investigators, who questioned the defendant after the incident occurred, testified that the defendant admitted during questioning that he had stabbed the victim in the back with a knife. A knife found outside the bar with blood on it was identified by the bartender and introduced into evidence. Finally, the defendant himself testified and admitted to stabbing the victim with a knife.

Turning to the defendant's contention that he acted in self-defense, we must conclude that there was sufficient evidence for the jury to find beyond a reasonable doubt that the defendant was not acting in self-defense. The issue of self-defense is a matter for the jury to decide. State v. Ivy, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993). However, once evidence is admitted supporting the defense, the state must prove beyond a reasonable doubt that the defendant did not act in self-defense. Tenn. Code Ann. § 39-11-201(a)(3); State v. Belser, 945 S.W.2d 776, 783 (Tenn. Crim. App. 1996). Tennessee Code Annotated section 39-11-611(a) states that

> a person is justified in threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death or serious bodily injury. The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds. There is no duty to retreat before a person threatens or uses force.

Tenn. Code Ann. § 39-11-611(a).

In the instant case, the defendant testified on his own behalf. According to the defendant's version of the events, he went to a local bar in the early evening, and the victim was seated at the bar when he arrived. The victim ordered a beer and then asked the defendant to go outside with him. The defendant agreed believing that the victim bought the beer for him and that they were going to smoke marijuana. Once outside, the victim hit him in the head with a beer bottle without provocation. The blow caused the defendant's right eye to come partially out of the socket and swell severely. The victim then stabbed the top of the defendant's head with

-5-

the broken bottle. The defendant fell to the ground, and the victim kicked him repeatedly as he lay on the ground. After he stopped kicking the defendant, the victim went back inside the bar and returned to his seat at the bar.

Shortly thereafter, the defendant also went back inside the bar and drank a beer at a table located several feet behind the victim. The defendant maintains that when he stood to leave the victim turned to face him and said, "Do you want some more of it?" At this point, the defendant claims that someone in the bar tapped him on the leg and placed a knife in his hand. The victim started to get up from his bar stool, and the defendant put his arms around the victim and felt the knife pierce the victim's back. The defendant immediately pulled the knife back, and the victim charged at him, swinging his fists. Then the bartender jumped over the bar with a baseball bat and began hitting the defendant as he ushered the defendant outside the bar. When asked why he stabbed the victim, the defendant responded that he was afraid that the victim was going to beat him up like he had earlier. He said he did not intend to stab the victim but that he was unwilling to take another beating from the victim. The only corroborating evidence introduced by the defendant was pictures of his injuries, which conformed to his description of the fight between him and the victim outside the bar.

In contrast to the defendant's version of what happened, the state's witnesses all testified that the victim did not say anything to the defendant before he was stabbed. Additionally, the state's witnesses testified that the defendant essentially snuck up behind the victim and stabbed him in the back as he sat at the bar. The victim admitted that he and the defendant fought outside the bar earlier in the evening. However, the victim asserted that it was the defendant who struck him with a beer bottle first.

We recognize that the defendant's account of the events differed substantially from the state's witnesses and that, if his version were to be believed, the jury could have found that he was acting in self-defense. However, the evaluation of witnesses' credibility, the weight and value to be given to the evidence, and resolution of factual issues raised by the evidence are left to the trier of fact. Cabbage, 571 S.W.2d at 835. Therefore, taking the evidence in the light most favorable to the state, we conclude the jury could have found the defendant's claim of self-defense was negated by the state's proof. This issue is without merit and the judgment of the trial court is affirmed.

Sentence

The defendant next asserts that he was improperly sentenced by the trial court. The defendant does not challenge the trial court's application of two enhancement factors to lengthen his sentence to five (5) years, two years more than the minimum in the applicable range. He does, however, challenge the manner of service, arguing that the trial court abused its discretion by ordering the defendant to serve (6) months in custody rather than ordering full probation.

When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This

presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-210(b); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the sentencing guidelines, and the findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In the instant case, the defendant was sentenced to five (5) years based upon the application of two enhancement factors and no mitigating factors. The trial court ordered the sentenced to be served in split confinement with six (6) months in custody and the remainder on probation. We begin by noting that the defendant is presumed to be a favorable candidate for alternative sentencing because he is a Range I, standard offender who was convicted of a Class C felony and who does not have any prior felony convictions. Tenn. Code Ann. § 40-35-102(6). Split confinement is considered an alternative sentence. State v. Bingham, 910 S.W.2d 448, 455-57 (Tenn. Crim. App. 1995). Accordingly, the defendant was afforded the presumption of alternative sentencing when he was given a sentence of split confinement. Tenn. Code Ann. § 40-35-102(6); State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999).

Once a defendant has been afforded the statutory presumption of alternative sentencing, the burden of establishing suitability for total probation is on the defendant Bingham, 910 S.W.2d at 455. To meet this burden, the defendant must demonstrate that probation will "subserve the ends of justice and the best interest of both the public and the defendant." Id. at 456. In determining whether or not to grant probation, the trial court should consider, among other factors, the circumstances surrounding the offense, the defendant's criminal record, the defendant's present condition, the defendant's credibility or lack thereof, and whether a sentence of full probation would unduly depreciate the seriousness of the offense. State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997); Bingham, 910 S.W.2d at 456.

In the instant case, the trial court correctly observed that it is the defendant's responsibility to establish his suitability for full probation. The trial court acknowledged that the defendant's conviction was not "the type of offense for which [the defendant] should be sent to the penitentiary for a five-year sentence." After reviewing the statutory factors, the trial court found that the seriousness of the offense required that the defendant serve some time in custody.

Tenn. Code Ann. § 40-35-103 (1)(B). In considering the seriousness of the offense, the trial court found that the victim suffered serious bodily injury and the victim's family was also significantly impacted by the assault. The victim's lung was punctured when the defendant stabbed him in the back, which required the victim to be hospitalized. The victim suffered a great deal of pain as a result of the treatment for his collapsed lung. At the time of the assault, the victim was responsible for caring for his injured and elderly father and was unable to continue doing so after the assault. The victim also had a twelve-year-old daughter at the time of the assault who was psychologically traumatized by the assault on her father.

Our review of the record leads us to the conclusion that the trial court did not err in finding that total probation would depreciate the seriousness of the offense. The defendant's contention that the trial court abused its discretion by ordering that he serve (6) months in confinement is, therefore, without merit. Accordingly, the judgment of the trial court is affirmed.

## Conclusion

When viewed in the light most favorable to the state, there was sufficient evidence to support the defendant's conviction for aggravated assault as charged in Count Two and to find that the defendant was not acting in self-defense. Furthermore, the trial court was within its discretion in ordering the defendant to serve six (6) months of his sentence in custody. The judgment of the trial court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE