IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
December 10, 2002 Session

## STATE OF TENNESSEE v. EDWARD CLAY and TIMOTHY B. CLAY

**Direct Appeal from the Circuit Court for Rutherford County**
**No. F51884A&B     Don R. Ash, Judge**

_____

**No. M2002-01319-CCA-R3-CD - Filed April 29, 2003**

_____

The co-defendants pled guilty to conspiracy to sell "ecstasy," a Schedule I controlled substance. After a sentencing hearing, each received a sentence of eight years to be served in split confinement, with all but eight months on probation. The co-defendants contend that the trial court erred in not granting them full probation. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES and NORMA MCGEE OGLE, JJ., joined.

Michael J. Flanagan and Dale M. Quillen, Nashville, Tennessee, for the appellants, Edward Clay and Timothy B. Clay.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and J. Paul Newman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Background Facts**

On August 15, 2001, detectives with the Murfreesboro Police Department arrested the co-defendants, Edward Clay and Timothy B. Clay, for attempting to sell a confidential informant 700 "ecstasy" pills.[1] The informant stated he had bought quantities of pills from the co-defendants in the past. The co-defendants were subsequently indicted for selling a Schedule I controlled substance, ecstasy, in violation of Tennessee Code Annotated section 39-17-417, a Class B felony.

_____

[1] The confidential informant asked for 1000 pills, but the co-defendants told him they could only deliver 700 at the time.

Both defendants pled guilty to the lesser offense of conspiracy to sell a Schedule I controlled substance, a Class C felony. Pursuant to the plea agreement, they agreed to be sentenced as Range II multiple offenders, despite the fact that neither defendant had a prior record. Following a sentencing hearing, both defendants were sentenced to eight years in the Tennessee Department of Correction, to be served in split confinement with eight months confinement and the remainder on probation. Additionally, they were fined $10,000 and were ordered to perform 1600 hours of community service and submit to random drug tests. The sole issue on this appeal is whether the trial court erred in denying the co-defendants full probation.

## Sentencing Hearing

A sentencing hearing was conducted on April 26, 2002. Testifying were Tom Thomas, Timothy Clay, Sr., Regina Clay, co-defendant Edward Clay, Wayne Powell, and co-defendant Timothy Clay. Additionally, the trial court considered the presentence report and letters.

Tom Thomas, co-defendant Edward Clay's former employer, testified that he felt the Edward made a bad choice, but if the court granted Edward probation, Thomas would remain present in Edward's life and would be there to assist him. Thomas said he would make it known if he became aware Edward violated a term of his probation. On cross-examination, Thomas said he was unaware earlier of Edward's drug usage.

Timothy Clay, Sr., the co-defendants' father, testified on behalf of both of his sons. He said that Edward had never failed at anything in his life. He said Edward appeared remorseful after his arrest and that if Edward were placed on probation, he would assist him in complying with the terms. Additionally, he said he would report Edward if he violated the terms of his probation. He testified that Timothy was going to church since his arrest and had found employment. Additionally, he testified that Timothy was getting drug counseling. He said that Timothy would have his assistance, and he believed Timothy would live as a law abiding citizen. He said he would report a probation violation if one occurred. On cross-examination, he stated Timothy had a Bachelor of Science degree in Criminal Justice Administration and was assumedly aware of the criminal justice system. Additionally, he said that Timothy served as a probation officer at the time of his arrest and would have come in contact and dealt with drug users on a regular basis.

Regina Clay, the co-defendants' mother, testified that both her sons felt "horribly sorry" for it (the crime). She said their lives had changed, and they now have a faith that had been lacking.

Co-defendant Edward Clay testified that he committed the crime because he was being "selfish," and that he was trying to get money to help handle the magazine he was working on. He said he was only supposed to deal drugs three times and then he was going to be done, but he got caught. He said that if he needs money again in the future he will not sell drugs, because there has been a big change in him. He said he is taking Paxil, an anti-depression medicine. He said he would abide by all conditions of probation if he received it and that he was no longer using any

drugs. On cross-examination, Edward stated that he saw selling drugs as an opportunity for quick money and that he was greatly responsible for his brother's involvement in the drug transaction.

Wayne Powell, a teacher at Lipscomb University, testified that he had known Timothy Clay for twenty-five years and knew his family, including Edward Clay, for over twenty years. Powell stated he recommended Timothy get counseling and that Timothy was actively involved with a counselor. He said he placed Timothy "very high on the scale" as to his possibility for rehabilitation. He said he would be available to assist Timothy. On cross-examination, Powell stated he agreed that drug dealers are a problem with youths.

Co-defendant Timothy Clay testified that he was "100 percent convinced" he could keep his life straight and be a law abiding citizen. He said his parents paid his fines, but he was repaying his parents. He said he had been using drugs since age twenty-five and that he thought he had quit. However, he said that he then thought the extra $1000 (from dealing drugs) would be a nice way of helping pay for his wedding. He said it was a stupid thing to do and that he was sorry. He said he was getting counseling and was drug free. On cross-examination, he said he had a degree in Criminal Justice. He said that the possibility of prison would serve as more of a deterrent for selling drugs than probation.

Both defendants were sentenced to eight years split confinement in the Tennessee Department of Correction, with eight months actual confinement. Additionally, they were fined $10,000 and were ordered to perform 1600 hours of community service and to submit to random drug tests.

**Standard of Review**

A defendant is eligible for probation if the sentence received by the defendant is eight years or less, subject to some statutory exclusions. Tenn. Code Ann. § 40-35-303(a). A defendant with a total effective sentence in excess of eight years is eligible for probation if the individual sentences imposed for the convictions fall within the probation eligibility requirements. State v. Langston, 708 S.W.2d 830, 832-33 (Tenn. 1986).

An especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6). A trial court must presume that a defendant sentenced to eight years or less and for whom incarceration is not a priority is subject to alternative sentencing. State v. Byrd, 861 S.W.2d 377, 379-80 (Tenn. Crim. App. 1993). It is further presumed that a sentence other than incarceration would result in successful rehabilitation, unless rebutted by sufficient evidence in the record. Id. at 380. However, although a defendant may be presumed to be a favorable candidate for alternative sentencing, the defendant has the burden of establishing suitability for total probation. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996); Tenn. Code Ann. § 40-35-303(b). Even though probation must be automatically considered, "the defendant is not automatically entitled to probation as a matter of law." Tenn. Code Ann. § 40-35-303(b),

Sentencing Comm'n Comments; State v. Hartley, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991). The co-defendants in the present case both pled guilty as Range II multiple offenders. As Range II offenders, they are eligible for alternative sentencing. However, they are not afforded favorable presumptions. Tenn. Code Ann. § 40-35-102(6) (especially mitigated or standard offenders convicted of Class C, D, or E felonies are presumed favorable candidates for alternative sentencing, not multiple offenders).

A defendant seeking full probation bears the burden on appeal of showing the sentence imposed is improper and that full probation will be in the best interest of both the defendant and the public. State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997).

The co-defendants argue that the trial court in this case exercised a policy of never granting full probation to those convicted of selling drugs, and they rely on the following statement of the trial court in pronouncing sentence in support of their position:

> I have to look at each case individually. And when I look at those cases individually I've got to see whether or not your lack of prior record is important. But I also know that this deterrence factor is important. So there's got to be some punishment. There's got to be some consequence. So, a slap on the wrist saying you get probation and you walk out of here and hug each other, I'm not going to do. Because I'm not going to allow people, as long as I'm up here, to sell drugs to other people and then walk away without some consequence.

This language indicates to us that the trial court did not consider these eligible co-defendants for full probation. Failing to at least consider these eligible co-defendants for alternative sentencing was a failure by the trial judge to consider all the relevant facts and circumstances. This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d) (1997). However, this presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, there is no presumption of correctness, and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997). As such, due to the failure of the trial judge to consider the co-defendants eligible for full probation, we review the sentences imposed *de novo* without the presumption of correctness.

When conducting a *de novo* review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments, as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988); Tenn. Code Ann. §§ 40-35-102, -103, -210 (1997) (Supp. 2002).

In determining whether to grant or deny probation, a trial court should consider the circumstances of the offense, the defendant's criminal record, the defendant's social history and

present condition, the need for deterrence, and the best interest of both the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Boyd, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995). The defendant's lack of credibility is also an appropriate consideration and reflects on a defendant's potential for rehabilitation. State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994).

**Circumstances of the Offense:** Probation may be denied based solely upon the circumstances surrounding the offense. State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995); Hartley, 818 S.W.2d at 374. However, the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring probation. Hartley, 818 S.W.2d at 374-75.

In considering the circumstances of the offense, the court may go beyond the negotiated plea and consider the "true nature" of the crime. State v. Biggs, 769 S.W.2d 506, 507-08 (Tenn. Crim. App. 1988), citing State v. Hollingsworth, 647 S.W.2d 937, 939 (Tenn. 1983). The true nature of this crime was that the co-defendants were involved in the sale of a Schedule I drug, ecstasy. The co-defendants were not selling just a few ecstacy pills to friends, but were involved in the sale of a large amount consisting of 700 pills, which amount is an excessive degree. The co-defendants were actually charged with selling a Schedule I controlled substance, in violation of Tennessee Code Annotated section 39-17-417(b), a Class B felony. Our legislature determined that anyone convicted of that crime would not be eligible for probation. Tennessee Code Annotated section 40-35-303(a) states in pertinent part, "A defendant shall be eligible for probation under the provisions of this chapter if the sentence actually imposed upon such defendant is eight (8) years or less; provided, that a defendant shall not be eligible for probation . . . if the defendant is convicted of § 39-17-417(b)." This factor leans heavily towards the proper denial of full probation because the crime which the co-defendants admitted to committing is a priority for incarceration, as set forth by our legislature.

Additionally, the Schedule I drug these co-defendants were selling was ecstasy. Ecstasy, or methylenedioxymethamphetamine (MDMA), is a relatively new, popular drug that carries severe, negative effects. Studies have shown ecstasy to have the ability to cause addiction and to create both psychological and physical problems, as well as death.[2]

**Co-defendants' Criminal Record:** Neither co-defendant had a prior criminal record. This factor weighs towards granting full probation.

**Co-defendants' Social History and Present Condition:** We conclude that Timothy's social history, particularly the fact that he possessed a bachelor's degree in criminal justice and worked as a probation officer, weighs against the awarding of full probation. We find it particularly reprehensible that an individual who worked within the criminal justice system would turn to the illegal selling of a Schedule I drug in order to earn extra money. We further conclude that Edward

---

[2] National Institute on Drug Abuse, (2003), at www.nida.nih.gov/infofax/ecstasy.html.

Clay has shown little or no real effort to rehabilitate. Additionally, the fact that he admittedly encouraged his brother to commit a crime, essentially for pure profit motive, is also particularly offensive and further weighs against a sentence of full probation.

**Deterrence Needs:** These co-defendants, while eligible, are not presumptively eligible for the alternative sentence of probation. Any statutory presumption of alternative sentencing would not be conclusive even if it existed, however, as the presumption may be rebutted by "evidence to the contrary." See Id.; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Guidance as to what may constitute "evidence to the contrary"– or evidence that the co-defendant is a member of the population for whom incarceration is a priority – is found in Tennessee Code Annotated section 40-35-103 (1997), which states that a court may order confinement when:

>   (A)   Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>   (B)   Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>   (C)   Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

A review of the present case reveals that section (B), confinement is necessary to avoid depreciating the seriousness of the offense or that confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses, applies. Primarily, the reason to deny probation in the present case would be for the deterrence value in requiring a period of incarceration. In State v. Hooper, 29 S.W.3d 1 (Tenn. 2000), our supreme court discussed the historical issues involved with using deterrence only as a reason to deny probation. After commenting on the inconsistencies that existed in applying deterrence as the sole reason in which to deny an offender probation, the court pointed out the conflicting goals of alternative sentencing versus incarceration, based on deterrence. Id. at 8-9. Due to these conflicting goals, our supreme court delineated some standards to apply before using deterrence as the "evidence to the contrary" that allows the denial of the presumption for alternative sentencing.

First, the supreme court overruled two cases, State v. Bingham, 910 S.W.2d 448 (Tenn. Crim. App. 1995), and State v. Bonestel, 871 S.W.2d 163, 169 (Tenn. Crim. App. 1993), which required that the record show "that the sentence imposed will have a deterrent effect . . . ." Tennessee Code Annotated section 40-35-103(1)(B) only states that confinement be "particularly suited" to provide a deterrent effect. Finding the standard as applied in Bingham and Bonestel to be contrary to the language of the statute, the court indicated that Bingham and Bonestel, or any other case that can be read to require proof that incarceration will or should result in deterrence, was overruled. Hooper, 29 S.W.3d at 10. In other words, actual definitive proof of a deterrent effect need not be presented at a sentencing hearing in order to use deterrence as the reason for the denial of an eligible offender's full probation.

Second, the supreme court noted that "because some aspect of deterrence is present in every case, a blanket policy allowing incarceration based solely upon deterrence could do significant harm to these purposes (referring to the purposes behind alternative sentencing and incarceration based on deterrence), if not eliminate them all together." Hooper, 29 S.W.3d at 9. In other words, there still has to be more than just the bald proposition that probation is being denied just due to the need for deterrence.

Third, the supreme court stated in referring to determining the efficacy of using deterrence that "in order to facilitate more meaningful appellate review, and to ensure greater consistency in this aspect of sentencing, trial courts should consider factors, such as the following, when deciding whether a need for deterrence is present and whether incarceration is 'particularly suited' to achieve that goal." Those five factors are:

(1)     Whether other incidents of the charged offense are increasingly present in the community, jurisdiction, or in the state as a whole;

(2)     Whether the defendant's crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from the criminal behavior;

(3)     Whether the defendant's crime and conviction have received substantial publicity beyond that normally expected in the typical case;

(4)     Whether the defendant was a member of a criminal enterprise, or substantially encouraged or assisted others in achieving the criminal objective; and

(5)     Whether the defendant has previously engaged in criminal conduct of the same type as the offense in question, irrespective of whether such conduct resulted in previous arrests or convictions.

Hooper, 29 S.W.3d at 10-12.

Moreover, the court makes it clear that these five factors are non-exhaustive, stating: We recognize that any enumeration of factors in this nebulous area is imperfect, and we do not preclude proof of any other factors deemed relevant by the sentencing court. These factors are meant to serve only as a guide, and a court need not find that all of these factors are present before ordering incarceration based on a need to deter similar crimes. Additional factors may be considered by the sentencing court, provided that (1) the sentencing court states these additional factors on the record with specificity, and (2) the presence of these additional factors is supported by at least some proof.

Id. at 12. In conducting our own *de novo* review of the record in the present case, we conclude that all of the above factors were not present as applied to these co-defendants, but that there were enough of the above factors that an eight-year sentence, with eight months in confinement, was not in error.

**Application of the Hooper Factors to Present Case**

(1) There was no evidence that factor one, whether other incidents of the charged offense are increasingly present in the community, jurisdiction, or in the state as a whole, was present.

(2) We conclude that there was evidence to support factor two, whether the co-defendants' crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from the criminal behavior. Evidence from the sentencing hearing indicated that the *primary* reason the brothers got involved in the sale of drugs was in order to gain financially. That reason weighs heavily toward the denial of probation for the reason of providing deterrence.

(3) We conclude there was some evidence of the presence of factor three, whether the co-defendants' crime and conviction have received substantial publicity beyond that normally expected in the typical case. The co-defendants' crime need not be known to the community as a whole, so long as it is known to the discrete community of individuals likely to commit similar crimes. Hooper, 29 S.W.3d at 11. In the present case, co-defendant Edward Clay admitted that he was responsible for getting his brother involved in the crime, and both defendants admitted to previously participating in similar criminal conduct. While not a strong factor, we nonetheless conclude that the limited circle of publicity this crime received does weigh towards the denial of probation.

(4) Similarly, factor four, whether the co-defendant was a member of a criminal enterprise, or substantially encouraged or assisted others in achieving the criminal objective, applies to co-defendant Edward Clay, who admitted to being more responsible for the transaction and encouraging his brother to get involved in the crime. This factor does not apply to Timothy Clay.

(5) Factor five, whether the co-defendant has previously engaged in criminal conduct of the same type as the offense in question, irrespective of whether such conduct resulted in previous arrests or convictions, applies to both defendants. Both admitted this was not the first time they sold drugs.

Accordingly, we conclude that while the trial court erred in the method in which it denied probation, imposing a policy that due to the nature of the crime, despite eligibility for probation, offenders were going to serve some time, it nonetheless arrived at the proper result, that these co-defendants be denied full probation. Just as deterrence alone, without more, cannot be used as the reason to deny full probation to an eligible offender, neither can we blankly determine that an eligible offender, without more, should automatically be granted full probation. The nature and circumstances of this case and the need for deterrence lead us to conclude that the denial of full probation to these co-defendants is proper.

For the foregoing reasons, we affirm the sentences imposed by the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE