IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 2000 Session

## STATE OF TENNESSEE v. JAMES HENRY DAVIS

**Appeal from the Criminal Court for White County**
**No. CR 247     Leon Burns, Jr., Judge**

_____

**No. M1999-02467-CCA-R3-CD - Filed August 2, 2000**

_____

The Defendant pleaded guilty to the offense of second degree murder. Sentencing was left to the discretion of the trial court. Following a sentencing hearing, the trial judge sentenced the Defendant to twenty-four years in the Department of Correction. On appeal, the Defendant challenges the length of his sentence. We modify the sentence to twenty-two years.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Modified.**

DAVID H. WELLES, J., delivered the opinion of the court, in which ALAN E. GLENN, J., and CORNELIA A. CLARK, SP. J., joined.

John B. Nisbett, III, Cookeville, Tennessee, for the appellant, James Henry Davis.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; Bill Gibson, District Attorney General; William M. Locke, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Defendant, James Henry Davis, has a long history of mental illness. At the time the victim was killed, she and the Defendant had been "dating," although the record is unclear concerning the duration or nature of their relationship. On August 11, 1997, the victim returned to her home from the White County Hospital, where she was employed. She arrived at her home a few minutes after eleven p.m. Her daughter, who was about fourteen years old at the time, was at home when she returned. Hearing her mother arrive at the house, the victim's daughter turned on the porch light and went to the door to meet her mother. At that time, the Defendant, who apparently had been waiting for the victim's return, came running up to the victim and viciously attacked her with a butcher knife. The victim attempted to defend herself, but she was stabbed and slashed numerous times about her face, arms and torso. She died shortly thereafter. Immediately after the attack, the Defendant ran from the scene. A short time after the killing, the Defendant apparently turned himself in at the White County Sheriff's Department.

The Defendant was indicted for the premeditated first degree murder of the victim. Following a mental evaluation and treatment, and after numerous pretrial motions, the Defendant entered into a negotiated plea agreement, under which he pleaded guilty to the lesser-included offense of second degree murder. After a sentencing hearing, the trial judge sentenced him to twenty-four years in the Department of Correction, which is one year less than the twenty-five year maximum sentence for a Class A felony. It is from the sentence imposed by the trial judge that the Defendant appeals.

When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988); Tenn. Code Ann. §§ 40-35-102, -103, -210.

The presumptive sentence for a Class A felony is the mid-point of the range if there are no enhancement and mitigating factors. Tenn. Code Ann. § 40-35-210(c). If there are mitigating and enhancement factors, the sentencing court must start at the middle of the range, enhance the sentence based upon applicable enhancement factors, and then reduce the sentence based upon applicable mitigating factors. Id. § 40-35-210(e). The weight to be given to each factor is within the discretion of the sentencing court so long as the record supports the court's findings and the court complies with the 1989 Sentencing Act. See State v. Shropshire, 874 S.W.2d 634, 642 (Tenn. Crim. App. 1993).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The presentence report reflects that at the time of sentencing, the Defendant was forty-six years old and divorced, with two children. He dropped out of school in the ninth grade. He had not been employed during the sixteen years preceding his arrest on this charge, and during this time he had been receiving social security disability payments. He had no prior record of arrests or convictions.

Attached to the presence report were various records concerning the Defendant's mental illness and history of mental health treatment. The Defendant was apparently hospitalized and/or treated at several institutions beginning in approximately 1981 and continuing until the time of his incarceration. He was hospitalized and/or treated at the Plateau Mental Health Center in Cookeville, the Middle Tennessee Mental Health Center in Nashville, the HCA Parthenon Pavilion in Nashville, the Parkview Medical Center in Nashville and the Mocassin Bend Mental Health Institute in Chattanooga. His diagnoses included schizophrenia, "chronic psychiatric disease, possibly related to organic brain syndrome," and possible "manic depressive" type illnesses.

Dr. William T. Kenner, a medical doctor who specializes in psychiatry, testified for the defense. He stated that the Defendant had a long, seventeen-year history of mental illness. He testified that he had reviewed the Defendant's medical records and had seen the Defendant on two separate occasions. He stated the Defendant had been diagnosed as psychotic and that in the course of his treatment and hospitalization at the Parthenon Pavilion, Vanderbilt Hospital, Middle Tennessee Mental Health Institute, Mocassin Bend Mental Health Institute and Plateau Mental Health Center, the Defendant's diagnosis had remained as that of schizophrenia. He stated that early during the course of the Defendant's illness, he was diagnosed as paranoid schizophrenic, but as his illness progressed, the diagnosis had moved on toward "undifferentiated schizophrenia with paranoid features." He said this change was typical with individuals who are schizophrenic in that they experience "a gradual and severe deterioration in their overall personality." He testified that the Defendant was hospitalized at Mocassin Bend just two months before the crime, and at that time he was again described as schizophrenic and quite disorganized, and "his ability to function then was extremely poor." He stated that when the Defendant stayed on his prescribed medications he would get better, but that his medication had detrimental side effects, and the Defendant, like many other patients, would sometimes stop taking his medication. Dr. Kenner testified that in his opinion, at the time the victim was murdered, the Defendant's mental condition would have supported and merited an insanity defense.

In arriving at the Defendant's sentence, the trial court applied four enhancement factors which he found would be sufficient to raise the sentence to the maximum of twenty-five years: (1) the Defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of an offense; (2) the personal injuries inflicted upon the victim were particularly great; (3) the Defendant possessed or employed a deadly weapon during the commission of the offense; and (4) the Defendant had no hesitation about committing a crime when the risk to human life was high. See Tenn. Code Ann. § 40-35-114(5), (6), (9), (10).

As mitigating factors, the trial court first found as the "strongest of all the mitigating factors" that the Defendant was suffering from a mental condition that significantly reduced his culpability for the offense. See id. § 40-35-113(8). While the judge stated that he did not know the extent to which the Defendant's culpability was reduced due to his mental condition, the court clearly found that this mitigating factor should be applied. As additional mitigating factors, the court stated that it was considering the Defendant's lack of any history of previous criminal behavior or criminal convictions and the Defendant's good reputation in the community. See id. § 40-35-113(13).

After weighing the mitigating factors against the enhancement factors, the trial court set the Defendant's sentence at twenty-four years, which was one year less than the maximum. It appears that the trial court found the four enhancement factors were sufficient to enhance the sentence to the maximum and that the mitigating factors were sufficient to reduce the sentence one year below the maximum.[1]

Although the Defendant does not specifically contest the applicability of the enhancement factors, based on our de novo review we must conclude that the trial judge erred in its application of two of the enhancement factors. Enhancement factors may not be considered if the factors themselves are essential elements of the offense. See id. § 40-35-114. In a homicide case, the personal injuries inflicted upon the homicide victim are by definition "particularly great." The killing of a person necessarily includes the infliction of great bodily injury. For this reason, enhancement factor (6) is inapplicable. See State v. Williamson, 919 S.W.2d 69, 82 (Tenn. Crim. App. 1995). Likewise, we must conclude that the trial court erred in applying as an enhancement factor that the Defendant had no hesitation about committing a crime when the risk to human life was high. This enhancement factor cannot be used to enhance the Defendant's sentence because it is inherent in the offense of second degree murder. State v. Belser, 945 S.W.2d 776, 792 (Tenn. Crim. App. 1996); see also State v. Butler, 900 S.W.2d 305, 314 (Tenn. Crim. App. 1994). Although this factor may be applicable to a sentence for a homicide if a defendant created a high risk to a life other than that of the victim, see State v. Bingham, 910 S.W.2d 448, 452-53 (Tenn. Crim. App. 1995), in the case at bar, there is no evidence in the record to support a finding that the Defendant's actions created a high risk to the life of the victim's daughter, who was the only other person present. She testified that she did not know if the Defendant even saw her.

In the case at bar, the trial court found that the four enhancement factors it applied were sufficient to raise the sentence from the presumptive starting point of twenty years to the maximum of twenty-five years. Because we have concluded that the trial court erred in its application of two of the four factors, we believe the remaining enhancement factors justify raising the sentence to twenty-three years. At the sentencing hearing, the State argued that the Defendant's mental condition was a factor which was considered in allowing the Defendant to plead guilty to second degree murder instead of facing trial for first degree murder. We recognize that a trial court may look behind a plea agreement and consider the nature of the offense committed. See State v. Hollingsworth, 647 S.W.2d 937, 939 (Tenn. 1983); State v. Biggs, 769 S.W.2d 506, 507 (Tenn. Crim. App. 1998). In this case, the trial judge determined that the Defendant's mental condition should be considered as a mitigating factor. See Tenn. Code Ann. § 40-35-113(8). Based on our review of the record, we agree with the trial court's finding in that regard. We also note that the trial court gave some consideration to other factors in mitigation. See id. § 40-35-113(13). Based on our de novo review of the record in this case, we modify the Defendant's sentence by ordering that he serve twenty-two years in the Department of Correction.

---

[1] According to the transcript, the court reporter's recording device malfunctioned, and the last one minute of the trial court's ruling was not available as a part of the transcript.

_____
DAVID H. WELLES, JUDGE