IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

FEBRUARY SESSION, 1998

FILED

May 5, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 02C01-9704-CR-00154 |
| | ) | |
| Appellee, | ) | |
| | ) | SHELBY COUNTY |
| V. | ) | |
| | ) | |
| | ) | HON. ARTHUR T. BENNETT, |
| TYRONE WRIGHT, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (SECOND DEGREE MURDER ) |

FOR THE APPELLANT:                    FOR THE APPELLEE:

BRETT B. STEIN                         JOHN KNOX WALKUP
236 Adams Avenue                       Attorney General & Reporter
Memphis, TN  38103

                                       RUTH A. THOMPSON
                                       Assistant Attorney General
                                       2nd Floor, Cordell Hull Building
                                       425 Fifth Avenue North
                                       Nashville, TN  37243

                                       JOHN W. PIEROTTI
                                       District Attorney General

                                       PAUL GOODMAN
                                       Assistant District Attorney General
                                       201 Poplar Avenue - Third Floor
                                       Memphis, TN  38103

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, Tyrone Wright, appeals as of right his conviction of second degree murder following a jury trial in the Shelby County Criminal Court. The trial court sentenced Defendant to seventeen (17) years incarceration as a Range I Standard Offender. In this appeal, Defendant raises three issues: (1) that the trial court erred in denying his Motion for Judgment of Acquittal; (2) that the evidence presented at trial was insufficient to support his conviction for second degree murder; and (3) that the State's closing argument was improper. We affirm the judgment of the trial court.

Testimony at trial revealed that on the afternoon of September 9, 1994, Defendant was shooting craps with Anthony Johnson, the victim's brother, at the corner of Johnson and Tillman streets. They gambled for about 30 minutes, and at the end of the game, Defendant owed Johnson five dollars. Defendant and Johnson began to argue over the fact that Defendant said they were using "bad" dice and that they belonged to Johnson. Defendant began calling Johnson names such as "bitches and whores." Johnson then hit Defendant with the side of his fist. A fight ensued and Johnson pinned Defendant up against a wall and then started to reach for his pocket knife. Defendant asked Johnson not to kill him, at which point Johnson let Defendant go. Defendant told Johnson he would go get the money he owed him. Johnson testified that neither of them were hurt, cut, bleeding or bruised. After the fight, Johnson got his pocket knife out of his pants pocket and began cleaning his nails. The victim, Alvin L. Carter, was not present during either the dice game nor the struggle afterwards.

Defendant then began walking to a nearby store in order to get some change with which to pay Johnson. In the meantime, the victim arrived at the corner of Johnson and Tillman streets to meet this brother, Anthony Johnson. About three minutes later, Defendant returned to the location where the earlier fight took place, and he was driving a car. According to Johnson, when Defendant got out of the car, he reached into the back seat and grabbed a pistol. He then "cocked it right there in the middle of the street," and began walking towards Johnson. Defendant said, "I'm going to -- I'm going to kill one of you bitches yet." He further stated, "Bitch, you must [sic] thought I wasn't coming back." Johnson testified that he did not think Defendant would actually shoot him because they were acquaintances of one another and had not had any problems in the past. In fact, Johnson said that he had given Defendant and his child car rides in the past, and that the two of them would talk, drink beer or smoke marijuana together occasionally.

As Defendant began climbing some steps towards Johnson, Johnson backed up until Defendant got to the top of the steps. At this point, Alvin L. Carter, the victim, intervened and hit the Defendant. When that happened, Defendant pulled the trigger on the gun which fatally wounded the victim. Johnson said that he then ran and grabbed Defendant's wrists and that he bit one of them so Defendant could not pull the trigger again. At some point during this struggle the gun did fire again, but no one was injured by this shot.

Officer Sharon Mosley testified that she responded to a call to go to the scene of the shooting at 3015 Johnson Street. When she arrived on the scene, Anthony Johnson ran up to her with a gun in his hand, yelling, "This is the gun that was used.

This is the gun that was used." She testified that the victim was laying face down in a grassy area in the alley and did not regain consciousness.

Officer R. W. Weddle testified that no finger prints were found on the gun because the gun had a rough texture that made it difficult to impossible to retrieve prints. Dr. O'Bryan Clarey Smith, an associate professor of pathology at the University of Tennessee, performed the autopsy on the victim. He testified that the victim died from a gunshot wound to his chest. Powder burns on the victim's body indicated that the victim was within a range of loose contact to six inches of the gun muzzle at the time of discharge.

Issues I. and II.

In his first issue, Defendant contends that the trial court erred in denying his motion for judgment of acquittal. In his second issue, Defendant argues that the evidence was insufficient to support his conviction. Because of the common legal standards and the factual evidence, this Court will address these two issues together.

Rule 29(a) of the Tennessee Rules of Criminal Procedure provides that a court shall "order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense." Once such a motion is made, "the trial court must favor the state with the strongest legitimate view of the evidence, including all reasonable inferences, and discard any countervailing evidence." State v. Anderson, 880 S.W.2d 720, 726 (Tenn. Crim. App. 1994). The

trial court is presented with the question of legal sufficiency of the evidence. State v. Campbell, 904 S.W.2d 608, 611 (Tenn. Crim. App. 1995). The same standard applies in determining whether to grant a judgment of acquittal as applies in determining the sufficiency of the evidence after a conviction. Anderson, 880 S.W.2d at 726.

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). This standard is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Williams, 914 S.W.2d 940, 945 (Tenn. Crim. App. 1995) (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1987). Nor may this court reweigh or reevaluate the evidence. Cabbage, 571 S.W.2d at 835. A jury verdict

approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. Grace, 493 S.W.2d at 476.

The evidence produced at trial clearly supports the decision of the trial court to deny Defendant's motion for judgment of acquittal, and the jury's decision to find Defendant guilty of second degree murder. Second degree murder is defined as "A knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). Tennessee Code Annotated section 39-11-302 provides the following with respect to the knowing requirement:

> 'Knowing' refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with resect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

Tenn. Code Ann. § 39-11-302(b).

Defendant argues that the proof presented at trial amounted to a case of voluntary manslaughter, not second degree murder. See Tenn. Code Ann. § 39-13-211(a). Tennessee Code Annotated section 39-13-311(a) defines voluntary manslaughter as "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." The trial court did give an instruction to the jury on voluntary manslaughter as a lesser offense of second degree murder. However, the jury chose to reject this theory.

Defendant argues that such adequate provocation did exist to lead him to act in an irrational manner. While our courts have held that mutual combat can provide

such adequate provocation, "[w]hether the acts constitute a 'knowing killing' (second degree murder) or a killing due to 'adequate provocation' (voluntary manslaughter) is a question for the jury." State v. Johnson, 909 S.W.2d 461, 464 (Tenn. Crim. App. 1995). In Johnson, the court stated:

> The issue for our consideration is merely whether the evidence established all of the elements of second degree murder. Because there are facts in the record that the defendant intentionally shot and killed an unarmed man, that is adequate. That the jury chose to reject both the notion of provocation and the claim of self-defense was well within their prerogative.

Id.

The evidence at trial showed that Defendant and the victim's brother, Johnson, had been gambling earlier in the day. Defendant called Johnson by several bad names and a fight ensued. Neither of the men were injured during this fight. Defendant then left to go get the money he owed Johnson, but when he returned he had a loaded gun with him which he cocked and then started walking toward Johnson and the victim saying, "I'm going to -- I'm going to kill one of you bitches yet." The victim, in an apparent effort to protect his brother, intervened by hitting Defendant. The gun was fired by Defendant, killing the victim. The police found physical evidence including the weapon, spent shell casings, a live round, and the car which was driven by Defendant.

After a careful review of the record, we find that the evidence presented clearly supports the trial court's decision to deny the motion for judgment of acquittal, and likewise provided sufficient evidence for a jury to find Defendant guilty of all the elements of the crime of second degree murder. These issues are without merit.

Issue III.

In his last issue, Defendant argues that the trial court erred in failing to grant a mistrial based upon the State's alleged misconduct during its' closing argument. The prosecutor stated the following:

> [W]hen the defendant approached Anthony Johnson with a cocked and loaded deadly weapon, he was acting knowingly; and if you find not guilty, it would be the equivalent of allowing somebody who places a bomb that goes off when the bomb squad tries to dismantle it, blaming the bomb squad for the explosion. And that's ridiculous.

The control of closing argument rests largely within the sound discretion of the trial court, and this Court will not interfere with that discretion absent clear abuse. State v. Thomas, 755 S.W.2d 838, 843 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1988). After reviewing the prosecutor's closing argument, we find the statements made to be wholly proper.

Assuming *arguendo* that the prosecutor's statements were improper, then it would be necessary to determine whether those statements made by the prosecutor "could have affected the verdict to the prejudice of the defendant." Harrington v. State, 215 Tenn. 338, 385 S.W.2d 758, 759 (Tenn. 1965). Five factors are considered in determining whether the improper conduct could have affected the verdict: (1) the conduct viewed in context and in light of the facts and circumstances of the case; (2) the curative measures undertaken by the court and the prosecution; (3) the intent of the prosecutor in making the improper statement; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength or weakness of the case. State v. Buck, 670 S.W.2d 600, 609 (Tenn. 1984); Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976).

-8-

When viewed in light of the facts of this case, including the relative strength or weakness of it, the prosecutor's statement had little if any effect in the decision of the jury. As previously discussed, there was certainly sufficient evidence of Defendant's guilt. Where there is overwhelming evidence of guilt, as here, improper comments by the State during closing argument do not warrant a mistrial or reversal, as there is no prejudice to the defendant. Smith v. State, 527 S.W.2d 737 (Tenn. 1975); State v. Wiggins, 729 S.W.2d 291 (Tenn. Crim. App. 1987); State v. Sexton, 724 S.W.2d 371 (Tenn. Crim. App. 1986). As no other errors in the trial are raised by Defendant, there is no need to analyze the "cumulative effect" of the alleged improper prosecutorial conduct with other trial errors.

Also, the trial court cautioned the jury at the time of the statement that no evidence was being presented at closing arguments, just the "summation and argument of the lawyers." During the jury instruction, the trial court also told the jury that "[s]tatements, arguments, and remarks of counsel are intended to help you in understanding the evidence and applying the law, but they are not evidence. If any statements were made that you believe are not supported by the evidence, you should disregard them."

Furthermore, the prosecutor explained that his only intent was to use the bomb as an analogy in order to show that Defendant acted "knowingly" when he approached Johnson and the victim with the loaded weapon while simultaneously threatening to kill someone. The record does not reveal any bad motive or intent on the part of the State in making this argument to the jury.

Again, we do not find the prosecutor's statements to be inflammatory or improper. However, even after analyzing the statements as improper for argument's sake, any error in the State's closing argument would be harmless. Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a). This issue is without merit.

Finding no merit to any of Defendant's claims, we accordingly affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, Judge

CONCUR:

(not participating)_____
JOSEPH B. JONES, Judge


_____
JOHN H. PEAY, Judge